ENRIQUE REYES COREANO, demandante y recurrido, *v.* ING. WILSON M. LOUBRIEL, DIRECTOR EJECUTIVO DE LA AUTORIDAD DE LOS PUERTOS DE PUERTO RICO ET AL., demandados y recurrentes.

*Número:* R-78-366          *Resuelto:* 31 de mayo de 1979

*José A. Suro,* abogado de los recurrentes; *R. Adolfo de Castro* y *Nívea Raquel Avilés Caratini,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El demandante y recurrido Reyes Coreano es un empleado público con diecisiete años de servicio al Gobierno en distintas agencias como contador, contralor, jefe de división de contabilidad y oficial administrativo. Llegó a la Autoridad de los Puertos procedente de la Autoridad de Tierras el 1ro. de julio de 1974 y se le nombró Ayudante Director Ejecutivo en administración y finanzas, en el servicio exento. El 17 de noviembre de 1976 la recurrente Autoridad de los Puertos aprobó un Reglamento de Personal mediante el cual se fijó en ocho el número de empleados de confianza, entre los cuales no estaba incluido el puesto del demandante a quien se le dio categoría permanente de empleado de carrera.[1] La nueva junta de directores de la Autoridad, instaurada como resultado de las elecciones generales de 1976, aprobó otro Reglamento de personal el 17 de marzo de 1977 en el cual la posición del demandante, allí designada como Subdirector Ejecutivo Auxiliar en Administración, fue clasificada como de confianza. Se le despidió por carta con efecto para el 31 de mayo de 1977 en la que la Autoridad recurrida adujo como razones del despido, el exceso de personal y la situación fiscal de la agencia. La agencia no hizo esfuerzo apreciable para reubicar al demandante en otra posición, partiendo de la premisa de que nunca fue empleado de carrera.

El empleado despedido presentó en el Tribunal Superior una acción civil sobre *injunction,* sentencia declaratoria y

---

[1] El Art. 105.6 de dicho Reglamento no permite la destitución de un empleado de carrera sin justa causa, previa formulación de cargos notificados por escrito y vista. El siguiente Reglamento de 17 de marzo de 1977 retuvo y ratificó esta disposición.

daños y perjuicios reclamando derecho a reinstalación en su empleo. Resolvió la sala de instancia que el Reglamento aprobado por la Autoridad el 17 de noviembre de 1976 era válido; que "el puesto que ocupó el demandante hasta el 25 marzo, 1977 era uno de carrera, con todos los privilegios y beneficios que en ambos Reglamentos se le otorgaban a estos puestos; que al ser cambiado a un puesto de confianza tenía derecho, en caso de ser removido, a ser reinstalado en un puesto igual o similar al que ocupaba en el servicio de carrera al momento en que pasó a ocupar el de confianza", a tenor del Art. 103.32 del Reglamento de 17 de marzo de 1977. La Sala de San Juan expidió el *injunction* ordenando la reposición del demandante de conformidad con las precedentes conclusiones, con abono de sueldos dejados de percibir.

Al recurso de la Autoridad, expedimos auto de revisión el 21 de diciembre de 1978, por notar que se había efectuado un cambio de categoría en personal dentro del período vedado por la Sec. 4.7 de la Ley de Personal del Servicio Público, Ley Núm. 5 de 14 de octubre de 1975, 3 L.P.R.A. sec. 1301 y ss.

En su alegato, la Autoridad recurrente imputa error al juez sentenciador por negar aplicación a esta agencia de las disposiciones de la citada Ley de Personal de 1975,[2] relativas a su Sec. 4.7, aprobación de reglamentos por agencias excluidas y requisitos del empleado de carrera.

■ Aun antes del cambio de categoría en el empleo del recurrido, del servicio exento a empleado de carrera, los hechos probados muestran una legítima expectativa de retener su posición con permanencia, pues había hecho del servicio público la vocación de su vida, por lo que según resuelto en *Lupiáñez* v. *Srio. de Instrucción*, 105 D.P.R. 696, 701 (1977), debió mediar justa causa y vista antes del despido. Mas hay

---

[2] Posición en conflicto con su defensa afirmativa en la contestación al efecto de que "[n]inguna de las disposiciones de la Ley de Personal; reglamento o disposiciones administrativas de dicha oficina se aplican en el caso de autos."

razones de derecho, independientes de la subjetividad de la expectativa, que inducen la decisión a que ahora llegamos.

■ El principio de mérito en el servicio público, con todo su contenido ético y moral, que aparte de ser fuente de eficiencia, lealtad y permanencia en los servicios que el pueblo demanda de su gobierno, es también amparo del servidor público contra la opresión e influencias extrañas a su trabajo, no tiene rango constitucional y por tanto, la plenitud o precariedad de su vigencia se determinan por ley de la Asamblea Legislativa. No empece la sonoridad de la declaración de política pública en el Art. 2 de la Ley de Personal de 1975, sus valiosas razones sólo cobran vida y eficacia en la esfera y con las limitaciones que ha tenido a bien imponer el legislador.

■ La política pública y el principio de mérito experimentaron considerable atenuación[3] en la propia Ley de 1975, una imperfección congénita, al declarar excluidos de sus disposiciones, por la Sec. 10.6, a los empleados de agencias o instrumentalidades del Gobierno que funcionen como empresas o negocios privados y también a los de aquéllas que tengan derecho a negociar colectivamente mediante leyes especiales. La Autoridad de los Puertos es una de estas últimas.[4]

La cuestión central del recurso de revisión, que concierne a la autonomía o grado de libertad de la Autoridad de los Puertos para adoptar sus propias reglas de personal no unionado ya fue específicamente resuelta en *Pastor Lozada* v. *Director Ejecutivo*, 101 D.P.R. 923 (1974) ; y la Ley de Per-

---

[3] Se confrontan a decisiva reválida con el reclamo de sindicalización de los servidores públicos hasta ahora no unionados.

[4] Así dispuesto por la Ley de Relaciones del Trabajo, en su Art. 2(2) y (11), 29 L.P.R.A. sec. 63(2) y (11), que también está precedida de vibrante declaración de política pública en respaldo del principio de negociación colectiva y afirmando que "[a] través de la negociación colectiva deberán fijarse los términos y condiciones de empleo." 29 L.P.R.A. sec. 62(3).

sonal de 1975 con su advertencia en su Sec. 10.6 de que las agencias excluidas "deberán adoptar, con el asesoramiento de la Oficina de Personal . . . un reglamento de personal incorporando el principio de mérito que regirá las normas de personal de aquellos empleados no cubiertos por convenios colectivos", no ha derogado ni modificado en forma alguna las disposiciones relativas a personal de la ley creadora de la Autoridad de los Puertos como corporación o instrumentalidad pública, Ley Núm. 125 de 7 de mayo de 1942, 23 L.P.R.A. sec. 331 y ss., a saber:

Art. 6. ". . . [A] la Autoridad se le confieren, y ésta tendrá y podrá ejercer, todos los derechos y poderes que sean necesarios o convenientes para llevar a efecto los propósitos mencionados, incluyendo, pero sin limitar la generalidad de lo anterior, los siguientes:

.        .        .        .        .        .        .        .

(m) Nombrar aquellos funcionarios, agentes y empleados y conferirles aquellas facultades, imponerles aquellos deberes, y fijarles, cambiarles y pagarles aquella compensación por sus servicios, que la Autoridad determine;" 23 L.P.R.A. sec. 336(m).

Art. 7. *Funcionarios y empleados*

"(a) Nombramientos, separaciones, ascensos, traslados, ceses, reposiciones, suspensiones, licencias, y cambios de categoría, remuneración o título de los funcionarios y empleados de la Autoridad, se harán y permitirán como dispongan las normas y reglamentos que prescriba el Administrador de Fomento Económico en consulta con el jefe de personal o el funcionario ejecutivo de la Oficina de Personal de Puerto Rico, conducente a un plan general análogo, en tanto el Administrador de Fomento Económico lo estime compatible con los más altos intereses de la Autoridad, de sus empleados y de sus servicios al público, al que pueda estar en vigor para los empleados del Gobierno estadual al amparo de las Leyes de Personal de Puerto Rico." 23 L.P.R.A. sec. 337(a).

En el diáfano lenguaje de esa ley orgánica de la Autoridad de los Puertos, hoy como ayer, el legislador remite a sus disposiciones especiales toda intervención con el personal de

la agencia, modificada en 1945 como hemos visto, en lo que concierne a negociación colectiva, por la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 63(2) y (11), mas intocada y ni siquiera mencionada en la Ley de Personal de 1975. El legislador que es artífice y máximo conductor del principio de mérito, al aprobar la Ley de Personal del Servicio Público (Ley Núm. 5 de 14 octubre de 1975) preservó la libertad de la Autoridad de los Puertos para administrar su personal y con clara implicación mantuvo la integridad de las normas especiales de personal ordenadas en el estatuto creador de la agencia. No hay que revisar, sino confirmar, nuestro pronunciamiento en *Pastor Lozada*, supra, a sus págs. 931, 932:

"La Ley de la Autoridad de los Puertos, Ley Núm. 125 de 7 mayo, 1942, según enmendada, 23 L.P.R.A. secs. 331 y ss., dispone, entre otras cosas, que los nombramientos y ceses de los funcionarios y empleados de la Autoridad se harán conforme a las normas y reglamentos que prescribe el Administrador de Fomento Económico en consulta con la Oficina de Personal de Puerto Rico, 'conducente' dicha consulta a un plan general análogo al de la Oficina de Personal del Gobierno de Puerto Rico, 'en tanto' el Administrador de Fomento Económico lo estime compatible con los intereses de la Autoridad de los Puertos, los de los empleados y los del servicio público.

Como puede verse, la ley dispone que el Administrador de Fomento Económico prescriba las normas y reglamentos sobre la administración de personal de la Autoridad. Eso es mandatorio. Además, la ley da la directriz en el sentido de que dichas normas y reglamentos 'conducirán' a un plan general 'análogo' (no exacto) de administración de personal al que existe para el Gobierno de Puerto Rico; esto es, el que administra la Oficina de Personal del Gobierno de Puerto Rico. Esto último es directivo, es exhortativo. Puede apreciarse que la Asamblea Legislativa deseaba respaldar y fomentar una administración de personal ordenada y científica, pero a la vez no quiso imponerle obligatoriamente a la Autoridad de los Puertos la letra de la ley y de los reglamentos de la Oficina de Personal del Gobierno, en atención a la antes mencionada necesidad de dicha Autoridad de operar con la flexibilidad y rapidez que sus responsabilidades requieren."

■ La prohibición en la Sec. 4.7 de la Ley de Personal de 1975, 3 L.P.R.A. sec. 1337, contra intervenciones con el personal durante un período que se extiende desde dos meses antes a dos meses después del día de elecciones generales es "salvaguarda por excelencia del principio de mérito" según la calificamos en *Ortiz* v. *Alcalde de Aguadilla*, 107 D.P.R. 819 (1978), pero el legislador no la impuso a la Autoridad de los Puertos, dejando su adopción por esta agencia a su decisión sobre su compatibilidad "con los más altos intereses de la Autoridad, de sus empleados y de sus servicios al público." Art. 7, Ley Núm. 125 de 7 de mayo de 1942, supra. Al enmendar su Reglamento de Personal el 17 de noviembre de 1976 y ascender al demandante recurrido a empleado de carrera, la Autoridad no violó la prohibición de la Sec. 4.7; simplemente ejerció su opción, concedida por ley, de *cambiar la categoría* de sus funcionarios y empleados en cualquier tiempo, sobre la premisa principal de sus "más altos intereses" con abstracción de otros factores. Hay que presumir en el legislador tanta sabiduría para excluir el personal unionado de la Ley de Personal como para dejar a elección de la Autoridad de los Puertos la observancia de la prohibición.(5) Nuestra decisión en *Ortiz*, supra, opera sobre hechos radicalmente distintos. Se trataba allí de una empleada del Municipio de Aguadilla a quien se extendió nombramiento permanente en el período vedado por la Sec. 4.7, de incuestionable

---

(5)La instrumentación del sistema de mérito jamás ha alcanzado universalidad monolítica en nuestra legislación. Otro ejemplo de cómo se descarta la uniformidad en busca de la flexibilidad funcional lo encontramos en la dispensa de requisitos para ascensos de empleados *de carrera* autorizados mediante *examen sin oposición* cuando las calificaciones especiales de tales empleados, o las exigencias especiales o excepcionales del servicio así lo justifiquen (Sec. 14, Ley Núm. 345 de 12 de mayo de 1947, 3 L.P.R.A. sec. 654), recurso continuado y mantenido en la sec. 4.4(1)(c) de la actual Ley de 1975 que autoriza "ascensos *sin oposición* cuando las exigencias especiales y excepcionales del servicio, y las cualificaciones especiales de los empleados así lo justifiquen", aun cuando condicionado a que no haya registro de elegibles o que haya razonable certeza de que sólo hay un candidato que reúna los requisitos. 3 L.P.R.A. sec. 1334(1)(c). (Énfasis nuestro.)

aplicación toda vez que todos los municipios de Puerto Rico, son parte del sistema de administración de personal en el que cada uno de ellos es administrador individual. Secs. 2.1(4) y 5.3(2) de la Ley Núm. 5 de 1975, 3 L.P.R.A. secs. 1311(4) y 1343(2). A diferencia de la Autoridad de los Puertos y otras agencias cuyos empleados tienen derecho a negociar colectivamente mediante leyes especiales, los municipios han sido absorbidos e integrados totalmente(6) en el sistema de administración de personal estructurado por la Ley de 1975. *Disparata non debent jungi.*

El extendido argumento en torno al párrafo de la Sec. 10.6 de la Ley Núm. 5 de 1975 referente a la adopción por las agencias e instrumentalidades excluidas, dentro de los ciento veinte días siguientes a la aprobación de la Ley, de un reglamento de personal incorporando el principio de mérito a las normas de personal no cubierto por convenios colectivos, se diluye ante el poder y libertad conferidos a la Autoridad de los Puertos en su ley orgánica para promulgar sus propios reglamentos. La Asamblea Legislativa "no quiso imponerle obligatoriamente a la Autoridad de los Puertos la letra de la ley y de los reglamentos de la Oficina de Personal del Gobierno." *Pastor Lozada,* supra, a la pág. 931.

*Con estos antecedentes y fundamentos, resultando que no hubo error en la sentencia dictada el 24 de agosto de 1978 por la Sala de San Juan del Tribunal Superior, ésta será confirmada.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Martín concurren en el resultado sin opinión.

---

(6) Así también lo entiende el Señor Feijóo, Director de la Oficina Central de Administración de Personal (O.C.A.P.) que en su carta normativa Núm. 2-77 de 28 de febrero de 1977 sobre "status de las agencias conforme a la Ley de Personal del Servicio Público de Puerto Rico" clasifica los *municipios* como administradores individuales; y como *excluidas* de las disposiciones de dicha Ley, veinte agencias de la rama ejecutiva, entre ellas y bajo el Número 13, la Autoridad de los Puertos.