WILLIAM TORRES SOLANO, querellante y recurrido, *v.* PUERTO RICO TELEPHONE COMPANY, querellada y peticionaria.

*Número:* CE-87-713          *Resuelto:* 20 de noviembre de 1990

500

504

506

508

*José Luis Verdiales Morales, Jay García Gregory, Carlos V. J. Dávila* y *José F. Santiago*, abogados de la peticionaria; *Jaime Luciano Jiménez*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR ALONSO ALONSO emitió la opinión del Tribunal.

I

*Los hechos*

El Sr. William Torres Solano era empleado gerencial de la Puerto Rico Telephone Company (en adelante la Telefónica) y trabajaba en la División de Asesoría de Ingeniería. El señor Torres Solano es ingeniero de profesión y su labor consistía en traducir del inglés al español textos de materias técnicas. Éste

comenzó a trabajar en la Telefónica en 1980 y fue despedido en 1984.

El 31 de mayo de 1984, el Ing. Juan Negrón —quien era Director de Asesoría de Ingeniería y Servicios Técnicos de Planta Externa de la Telefónica y supervisor de Torres Solano— citó a sus oficinas al Sr. Manuel Nuño Gorbea —quien también es empleado de la Telefónica y compañero de trabajo de Torres Solano— para discutir algunos asuntos relacionados con sus labores. Durante el transcurso de la reunión, Torres Solano irrumpió bruscamente en la oficina del Ing. Juan Negrón e inquirió a Nuño Gorbea en relación con un informe que éste le había preparado. El señor Torres Solano, en voz alta y en tono descortés, le manifestó a Nuño Gorbea con relación al informe lo siguiente: "Con lo que dices aquí no dices nada." Relación del procedimiento, determinaciones de hecho, conclusiones, pág. 6. Inmediatamente, el señor Nuño le contestó: "En ese tono que estás hablando yo no puedo seguir ésto." Íd. En ese momento, el señor Nuño Gorbea intentó salir de la oficina, pero el señor Torres Solano se lo impidió cuando en ese preciso instante lo golpeó con el puño en la parte posterior de la oreja izquierda. Como consecuencia de la agresión, Nuño Gorbea cayó al suelo. También cayeron al suelo sus espejuelos.[1]

Ante esta situación, el ingeniero Negrón le advirtió inmediatamente a Torres Solano que su actuación podía conllevar la suspensión de su trabajo. Éste permaneció en silencio y manifestó que no se sentía bien y que quería acudir al Fondo del Seguro del Estado.

Ese mismo día, el ingeniero Negrón preparó una carta para Torres Solano en la cual le indicaba que había sido suspendido de empleo y sueldo por violar la Regla 48 del Reglamento de Personal para los Empleados Gerenciales de la Puerto Rico Telephone Company de 4 de abril de 1983 (en adelante Reglamento de Personal de la Telefónica). La carta fue enviada por

---

[1] Nuño Gorbea tuvo que ser atendido luego por un médico, aunque no resultó seriamente herido.

correo certificado al día siguiente. Mediante carta de 22 de junio de 1984, la suspensión fue cambiada a destitución, retroactiva la misma a 31 de mayo de 1984, fecha en que ocurrieron los hechos.

Luego de estos incidentes, Torres Solano solicitó la revisión de la decisión de su supervisor al Presidente de la Telefónica. Éste nombró un Oficial Examinador para que tomara una decisión con relación a la destitución. Durante la vista evidenciaria ante dicho examinador, el señor Torres Solano presentó prueba sobre unos incidentes previos a la agresión ocurridos entre él y el señor Nuño Gorbea. Según esa prueba, el señor Nuño Gorbea frecuentemente "le gastaba bromas y le ponía sobrenombres". Según Torres Solano, estos hechos fueron parte de una provocación que culminó en la agresión perpetrada. Sin embargo, no existe prueba en el récord de que en el momento inmediato a la agresión hubiera provocación por parte del señor Nuño Gorbea.

El Oficial Examinador emitió su decisión el *15 de abril de 1985*, después de haber celebrado varias vistas. En su resolución, el Oficial Examinador confirmó la destitución de Torres Solano por entender que la agresión implicaba justa causa para el despido a pesar de haber sido ésta su primera ofensa. *No obstante, el Oficial Examinador le reconoció el derecho a recobrar retroactivamente su salario desde la fecha de la destitución hasta la fecha de su decisión.* Éste fundamentó su concesión de paga retroactiva en que a Torres Solano se le había violado su derecho a un debido proceso de ley al no habérsele conferido el derecho a una vista previa a su despido, en conformidad con lo resuelto por el Tribunal Supremo de Estados Unidos en *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1988).

■ Tanto Torres Solano como la Telefónica presentaron ante el Tribunal Superior dos (2) recursos de revisión relativos a la decisión del Oficial Examinador y del Presidente de la Telefónica. Torres Solano cuestionó la confirmación de su destitución (Civil Núm. 85–2346), y la Telefónica, la concesión retroactiva de los salarios dejados de percibir (Civil Núm. 85–2337). Durante la tramitación de los recursos surgió una controversia entre las

partes que fue objeto de nuestra opinión en *Torres v. P.R. Telephone Co.*, 118 D.P.R. 198 (1987.)(2) Luego de considerar los planteamientos allí expuestos, devolvimos el caso al Tribunal Superior con instrucciones de que se continuaran los procedimientos. Finalmente, éste declaró con lugar el recurso instado por Torres Solano y revocó la destitución por entender que sus actuaciones sólo ameritaban una suspensión de sesenta (60) días. Por esta razón el tribunal ordenó (en el caso Civil Núm. 85–2346) su restitución con el pago de emolumentos y desestimó por académico (en el caso Civil Núm. 85–2337) el recurso de revisión instado por la Telefónica que cuestionaba la aplicación retroactiva del caso de *Cleveland Board of Education v. Loudermill*, supra.

Inconforme con dichas sentencias, la Telefónica acudió ante nos en una petición conjunta de *certiorari* para cuestionar la corrección de las mismas. Alega que el Tribunal Superior incurrió en error al revocar la decisión confirmatoria del despido emitido por el Oficial Examinador y al dictaminar que las actuaciones del señor Torres Solano sólo ameritaban una suspensión de sesenta (60) días. *También le imputa error al tribunal de instancia al haber desestimado su recurso por académico, sin entrar a considerar la corrección de la decisión del Oficial Examinador de aplicar retroactivamente la normativa del caso Cleveland Board of Education v. Loudermill, supra. Además, alega que el dictamen del Oficial Examinador tiene el efecto de declarar inconstitucionales la Sec. 12.3 del Reglamento de Personal de la Telefónica y la Sec. 4.6(4) de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1336(4), así como el Art. 9.2 del Reglamento de Personal; Áreas Esenciales al Principio de Mérito* de la Oficina Central de Administración de Personal (en adelante Reglamento de Personal de O.C.A.P.).

---

(2) Allí resolvimos que la decisión del Oficial Examinador, nombrado por el Presidente de la Telefónica, equivale a un dictamen cuasijudicial sujeto a la revisión de los tribunales. También sostuvimos que no existe término para acudir en revisión al Tribunal Superior contra una determinación del Oficial Examinador, por lo que aplica la doctrina de incuria.

Por la importancia que reviste el recurso, expedimos el auto de *certiorari* para revisar ambas sentencias: la del caso Civil Núm. 85-2346 y la del caso Civil Núm. 85-2337.

## II

*La naturaleza de la Telefónica y el principio de mérito*

Antes de proceder a la exposición de la controversia sobre si se requería una vista previa al despido, debemos recapitular de manera sucinta la naturaleza de la Telefónica como corporación público-privada y el *status* de sus empleados dentro del sistema de personal público.

■ Como expresamos anteriormente en *Torres Ponce v. Jiménez*, 113 D.P.R. 58 (1982), la Telefónica, subsidiaria de la Autoridad de Teléfonos, es una corporación incorporada bajo las leyes del estado de Delaware, cuyo propósito consiste en proveer un servicio público esencial. Este desdoblamiento entre entidad pública y entidad privada de la Telefónica tiene como consecuencia que "para ciertos asuntos o negocios jurídicos, de acuerdo al caso en particular se le considerará como corporación pública o corporación privada". *Torres Ponce v. Jiménez*, supra, pág. 69.

■ En conformidad con lo que resolvimos en *Torres Ponce v. Jiménez*, supra, la Autoridad de Teléfonos es una de las agencias excluidas del sistema de personal del Estado Libre Asociado de Puerto Rico. Sin embargo, en virtud de la Sec. 10.6 de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, conocida como la Ley de Personal del Servicio Público de Puerto Rico (en adelante Ley de Personal), 3 L.P.R.A. sec. 1338, la Autoridad de Teléfonos venía obligada a adoptar un reglamento de personal que incorporara el principio de mérito para sus empleados gerenciales. Conforme expresamos en *Torres Ponce v. Jiménez*, supra, en *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113 (1989), y más recientemente en *Aut. de Puertos v. Mun. de San Juan*, 123 D.P.R. 496 (1989), la Ley de Personal persigue el

propósito de extender el principio de mérito al mayor número posible de servidores públicos. El principio de mérito también le es aplicable a la subsidiaria de la Autoridad de Teléfonos, la Telefónica, por las mismas razones que le es aplicable a la primera, esto es, el principio de mérito "[p]ropicia el mejor y más eficiente servicio". *Torres Ponce v. Jiménez*, supra, pág. 70. Como secuela de lo anterior, sostuvimos que el Reglamento de Personal de la Telefónica debía cumplir "con el propósito primordial de garantizar la aplicación estricta del principio de mérito". *Cf. Pueblo v. Hernández Torres y Barreda*, 125 D.P.R. 560 (1990).

En el despido de *Torres Ponce v. Jiménez*, supra, el Reglamento de Personal de la Telefónica no proveía para la celebración de una vista con antelación al despido y, por consiguiente, en dicho caso la Telefónica no la celebró. Sin embargo, allí expresamos que la Ley de Personal le concedía a los empleados públicos el derecho a la celebración de una vista previa al despido y procedimos a dejar sin efecto el despido por no habérsele conferido tal derecho estatutario.

## III

*La reglamentación existente en la Telefónica*

Como secuela de nuestra opinión en *Torres Ponce v. Jiménez*, supra, la Telefónica adoptó su reglamento de personal para los empleados gerenciales con el objetivo de incorporar el principio de mérito para regular y proteger a ese grupo de empleados. Dicho cuerpo de reglas dispuso que tenía "como propósito crear un clima de ambiente adecuado para que los empleados gerenciales de la Puerto Rico Telephone Company . . . reciban un trato justo e imparcial, en el que se aplique el principio de mérito como la norma a regir en la Administración de su Personal", además de establecer "las acciones disciplinarias encaminadas a tomar aquellas medidas correctivas necesarias cuando la conducta de un empleado no se ajusta a las normas establecidas

por esta Compañía". Petición conjunta de *certiorari*, Apéndice, págs. 154 y 155.

◼ El principio de mérito conlleva que los más aptos, de acuerdo con sus méritos y capacidades, sean los que sirvan al Gobierno —3 L.P.R.A. sec. 1311— de suerte que en la administración de la cosa pública el Estado alcance "los más altos niveles de excelencia, eficiencia y productividad" en los servicios que brinda al pueblo. 3 L.P.R.A. sec. 1312.

[11] Ello presupone el mantenimiento de un clima de armonía y satisfacción en el trabajo, que redunde en un alto grado de motivación y espíritu de servicio entre los empleados, con el fin de mantener la continuidad y regularidad en la prestación de los servicios públicos. Véanse: 3 L.P.R.A. sec. 1312(2) y (3); J.R. Feijóo, *Productividad y el Servicio Público*, XI (Núms. 42–43) Rev. Trabajo 45, 45–54 (1983).

◼ *El servicio público exige de sus empleados una conducta compatible con los objetivos de excelencia, eficiencia y productividad, y con los criterios de seguridad, armonía, orden, disciplina entre compañeros y continuidad de servicios al pueblo.*

◼ De ahí que la Sec. 10.2 del referido Reglamento de Personal de la Telefónica establezca que:

*Los empleados regulares gerenciales tendrán permanencia en sus plazas, siempre que satisfagan los criterios de productividad, rendimiento, orden y disciplina* que deben prevalecer en la Telefónica. Entre otros que se asignen, se considerarán como deberes y obligaciones de los empleados, los siguientes:

1. La asistencia regular y puntual al trabajo; y el cumplimiento cabal de la jornada de trabajo establecida;

2. El rendimiento y diligencia en la realización de las funciones y tareas asignadas a sus plazas y otras compatibles con éstas que se les asignen;

3. *La observación de las normas de comportamiento correcto, cortés y respetuoso en sus relaciones con sus supervisores, supervisados, compañeros de trabajo y ciudadanos* . . . . (Énfasis suplido.) Alegato parte demandante recurrida, *Exhibit IV*, pág. 19.

■ Para proveer unas guías en la administración de la disciplina en el trabajo y desarrollar en el empleado un mejor entendimiento de lo que constituye causa razonable o justa causa para tomar acción disciplinaria en su contra, así como para corregir al empleado y mantener la disciplina y la moral del grupo de empleados dentro de la organización, la Telefónica estableció en su reglamento unas normas claras de disciplina.

■ La Sec. 10.4(17), ofensa Núm. 48 del Reglamento de Personal de la Telefónica, tipificó como ofensa los: "[a]ctos amenazantes, indecentes u obscenos, *agresiones*, [y] provocacion[es] de peleas." (Énfasis suplido.) Alegato parte demandante recurrida, *Exhibit* IV, pág. 35. Como sanción por cualquiera de esos actos dispuso una penalidad mínima de diez (10) días de suspensión y una *máxima de despido, como primera ofensa.* Como segunda ofensa, la penalidad fija era el despido. El inciso (6) de la referida Sec. 10.4 dispone que "[l]a penalidad o remedio que se decida aplicar debe ser la que razonablemente se espera que corrija al empleado y mantenga la disciplina y la moral del grupo". Alegato parte demandante recurrida, *Exhibit* IV, pág. 22.

Estos criterios, así como los esbozados anteriormente conforme a los objetivos del servicio público, son los que guían y limitan la discreción de la agencia para tomar una medida disciplinaria contra un empleado gerencial de la Telefónica. Ello implica que la medida disciplinaria debe guardar proporción con la ofensa cometida.[3]

■ El Reglamento de Personal de la Telefónica determinó que la agresión de un empleado hacia otro es justa causa para el despido aun cuando fuera la primera ofensa del agresor. Esa regla de la Telefónica nos parece razonable. La aplicación de la acción disciplinaria es, a su vez, proporcional a la ofensa que intenta corregir, aun cuando se trate de una primera ofensa.

*El efecto directo de una agresión a un compañero de trabajo es el daño físico, la humillación y el menosprecio de la dignidad*

---

[3] *Cf. Srio. Trabajo v. I.T.T.*, 108 D.P.R. 536, 546 (1979).

*humana del agredido. Además, puede causar daños directos a la propiedad de la agencia, así como distraer la atención de los demás compañeros de labores. En la cadena de eventos directos detiene así la continuidad y regularidad en la prestación de servicios en menoscabo de la eficiencia y productividad de la agencia.*

En resumen, por ir en contra de los objetivos y criterios que deben imperar en el empleo público, la agresión a un compañero de trabajo durante horas laborables y en los predios de la agencia es causa justificada para el despido, aun cuando sea la primera falta del empleado.

A la luz de los parámetros que rigen el empleo público, concluimos que la agresión perpetrada por Torres Solano justificaba su despido como penalidad por una primera ofensa.

De los hechos se desprende que Torres Solano irrumpió de forma brusca en la reunión que sostenían su compañero Nuño Gorbea y el ingeniero Negrón. Al hacerlo interrumpió las labores de ambos y el funcionamiento habitual de la actividad administrativa de un supervisor y otro trabajador en detrimento de la continuidad y regularidad de los servicios que prestaba la agencia.

En forma directa infligió daño físico a Nuño Gorbea, quien tuvo que ser atendido por un médico. Sometió a dicho empleado a la humillación y al menosprecio de sus compañeros en abierto menoscabo de su dignidad humana.

Su conducta no sólo afecta a su compañero sino también a la agencia. La agresión perpetrada por Torres Solano, de por sí, *afecta el ambiente de tranquilidad, paz, seguridad y armonía en el cual deben laborar los demás empleados* y el cual la Telefónica debe asegurar a los mismos. *En su lugar, creó un ambiente de aprehensión en las relaciones interpersonales del grupo, desmoralizó el trabajo en equipo y anuló la motivación y el espíritu de servicio.*

■ La situación se agrava, ya que al momento de ocurrir la agresión no estuvo provocada por el agredido(4) y se produce frente a un supervisor, en horas laborables y en el lugar de trabajo.(5)

## IV

*Nuestra legislación y reglamentación sobre el derecho a vista previa al despido en el sector público*

■ *En el momento en que ocurrió el despido de la demandante en el caso de Torres Ponce v. Jiménez,* supra, *la Ley de Personal expresamente le confería a los empleados el derecho a vista previa en su Sec. 4.6(4)* y en la Sec. 9.2 del Reglamento de Personal de O.C.A.P., *supra.*

La Sec. 4.6(4) de la Ley de Personal, *supra*, disponía:

> Las autoridades nominadoras podrán destituir a cualquier empleado de carrera por justa causa y previa formulación de cargos, por escrito *y previa vista administrativa, si así lo solicitare el empleado.* (Énfasis suplido.) 3 L.P.R.A. sec. 1336(4).

La Sec. 9.2 del Reglamento de Personal de O.C.A.P., *supra,* págs. 74–75, implantaba la referida Sec. 4.6(4) de esta forma:

> . . . [e]n todo caso que surja la posibilidad de aplicación de medidas disciplinarias cuya sanción pudiera resultar en la suspensión de empleo y sueldo o la destitución de un empleado, la autoridad nominadora adoptará el siguiente procedimiento:
>
> La autoridad nominadora hará una investigación dentro de los diez (10) días laborables desde que tuvo conocimiento oficial de los hechos, y hará una determinación de si procede el tomar alguna

---

(4) Si bien durante la celebración de la vista evidenciaria ante el Oficial Examinador y la revisión judicial ante el Tribunal Superior Torres Solano pasó prueba sobre unos incidentes ocurridos entre él y Nuño Gorbea con anterioridad a la agresión donde, aparentemente, Nuño Gorbea "le gastaba bromas y le ponía sobrenombres", consideramos insuficientes esos incidentes para responder con una agresión en un momento posterior y sin motivación o provocación directa.

(5) *La violencia en la sociedad atenta contra los principios básicos de sana convivencia social, respeto al prójimo, a su dignidad y a su autoestima. El lugar de trabajo, sea este público o privado, no puede estar exento de la aplicación de estos principios básicos de convivencia humana.*

medida disciplinaria. *De proceder tal medida disciplinaria formulará al empleado cargos por escrito y se le notificará advirtiéndole de su derecho a una vista administrativa informal dentro del término de quince (15) días laborables, a partir de la fecha del recibo de la notificación de la formulación de cargos. En la vista el empleado afectado tendrá derecho a presentar la prueba que estime necesaria.* Luego de la vista, o de transcurrido el término de quince (15) días sin que el empleado haya solicitado la misma, la autoridad nominadora tomará la decisión que entienda conveniente. Si la decisión fuera destituir al empleado o suspenderlo de empleo y sueldo le advertirá al empleado de su derecho de apelación ante la Junta dentro del término de treinta (30) días a partir del recibo de la notificación.

En aquellos casos de mal uso de fondos públicos o cuando haya motivos razonables de que existe un peligro real para la salud, vida o moral de los empleados o del pueblo en general, se podrá suspender de empleo y sueldo al empleado antes de la vista administrativa. (Énfasis suplido.)

■ Mediante el inciso (4) de la Ley Núm. 1 de 17 de julio de 1979 *se suprimió* del antes transcrito apartado (4) de la Sec. 4:6 de la Ley de Personal la frase final que leía "*y previa vista administrativa, si así lo solicitare el empleado*". (Énfasis suplido.) En consonancia con la enmienda estatutaria antes explicada, se enmendó también, en 1980, la disposición reglamentaria a que hicimos referencia. Ahora, la Sec. 9.2 del Reglamento de Personal de O.C.A.P., *supra*, en su parte pertinente, dispone de la manera siguiente:

En todo caso que surja la posibilidad de aplicación de medidas disciplinarias cuya sanción pudiera resultar en la suspensión de empleo y sueldo o la destitución de un empleado, la autoridad nominadora adoptará el siguiente procedimiento:

La autoridad nominadora hará una investigación dentro de los diez (10) días laborables desde que tuvo conocimiento oficial de los hechos, y hará una determinación de si procede el tomar alguna medida disciplinaria. De proceder tal medida disciplinaria formulará al empleado cargos por escrito y le informará sobre su decisión. *Si la decisión fuera destituir al empleado o suspenderlo de empleo y sueldo le advertirá al empleado de su derecho de apelación ante la Junta dentro del término de treinta (30) días a partir del recibo de la notificación.*

En aquellos casos de mal uso de fondos públicos o cuando haya motivos razonables de que existe un peligro real para la salud, vida o moral de los empleados o del pueblo en general, se podrá suspender de empleo y sueldo al empleado antes de la determinación sobre la acción a seguir. (Énfasis suplido.)

■ La enmienda de 1979 a la Ley Núm. 5, *supra*, y al Reglamento de Personal de O.C.A.P. tuvo el efecto práctico de eliminar ese derecho a *una vista previa informal* en la agencia, previo al despido y como parte del principio de mérito garantizado por la citada Ley de Personal.

■ Del Historial Legislativo de la Ley Núm. 1 de 17 de junio de 1979 surje que el propósito de la Asamblea Legislativa al eliminar esa vista informal previa fue evitar dilaciones en la tramitación de medidas disciplinarias. Véase Informe de la Comisión que estudió el P. del S. 922 (el cual se convirtió en Ley Núm. 1, *supra*).

■ El Reglamento de Personal de la Telefónica, al momento del despido de Torres Solano, tampoco proveía para la celebración de una vista previa al despido.

V

*Nuestra jurisprudencia sobre el derecho a vista previa al despido y las enmiendas introducidas por la Ley Núm. 1, supra*

■ Este Tribunal ha reconocido el derecho de los empleados públicos a una vista informal previa al despido. La mayoría de estas decisiones se fundamentan en las leyes de personal vigentes al momento de ocurrir el despido. *Torres Ponce v. Jiménez*, supra, resuelto bajo la Ley de Personal de 1975; *Cantellops v. Fernós, Comisionado*, 65 D.P.R. 797 (1945), resuelto bajo la Ley Núm. 88 de 11 de mayo de 1931; *Pérez v. Esteves, Comisionado*, 43 D.P.R. 13 (1932) y *Gil v. Chardón, Comisionado*, 41 D.P.R. 210 (1930), resueltos bajo la Ley de 14 de marzo de 1907; *Soto v. Alcalde Municipio de Bayamón*, 99 D.P.R. 415 (1970), resuelto bajo el

520

Art. 93 de la antigua Ley Municipal, Ley Núm. 142 de 21 de julio de 1960 (21 L.P.R.A. ant. sec. 1101 *et seq.*).

En *Lupiáñez v. Srio. de Instrucción*, 105 D.P.R. 696, 701 (1977), sostuvimos que para que fuera válida la destitución de un empleado "tenía que mediar justa causa y la celebración de vista", pues de lo contrario *se despojaría a un empleado de su propiedad sin el debido proceso de ley*. Allí confirmamos una sentencia del Tribunal Superior en la cual se determinó "que a la demandante se le había privado de su propiedad sin el debido proceso de ley, *al no habérsele dado la oportunidad de ser oída antes de separarla de su puesto*". Íd., págs. 698–699. Reconocimos el derecho de los empleados públicos a una vista previa como parte de las garantías del debido proceso de ley. Esta norma fue reiterada en *Reyes Coreano v. Director Ejecutivo*, 108 D.P.R. 781, 783 (1979),(6) al sostener que "según resuelto en *Lupiáñez v. Srio. de Instrucción*, 105 D.P.R. 696, 701 (1977), debió mediar justa causa y vista antes del despido".

Posterior a la enmienda de 17 de julio de 1979 a la Ley de Personal y su reglamento sostuvimos en *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 730 (1982):

> *Hemos resuelto* que el debido proceso de ley no requiere que haya una vista previa a toda privación de un derecho o interés propietario. Cuando hay una *privación temporal* basta que *en algún momento significativo u oportuno* el afectado tenga la oportunidad de defenderse y presentar un caso en un proceso con adecuadas garantías. Se reconoce que hay ocasiones en que el Estado tiene algún interés de importancia que exige la *intervención temporal* con la propiedad o libertad de una persona antes de que pueda brindársele la oportunidad de ser oído. *La doctrina informa que para determinar si el tipo de vista concedida y el momento en que se brinda son constitucionalmente aceptables, hay que anali-*

---

(6) El caso *Reyes Coreano v. Director Ejecutivo*, 108 D.P.R. 781 (1979), fue revocado por otras razones en *Reyes Coreano v. Director Ejecutivo*, 109 D.P.R. 229 (1979), revocado a su vez en *Reyes Coreano v. Director Ejecutivo*, 110 D.P.R. 40 (1980). *Reyes Coreano v. Director Ejecutivo*, 108 D.P.R. 781 (1979), fue resuelto el 31 de mayo de 1979.

*zar conjuntamente los intereses gubernamentales y los de la persona afectada . . . .* (Énfasis suplido.)[7]

■ También en *Vélez Ramírez v. Romero Barceló*, supra, págs. 730–731, señalamos los tres (3) factores que deben considerarse para determinar, como requisito mínimo de debido proceso de ley, si el empleado público tiene derecho a una vista previa a su despido:

. . . (1) los intereses afectados por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas; y (3) el interés gubernamental protegido con la acción sumaria, inclusive la función de que se trata y las cargas fiscales y administrativas que conllevaría el imponer otras garantías procesales.

Examinemos el caso de autos a la luz de los tres (3) factores enumerados en *Vélez Ramírez v. Romero Barceló, supra.*

El primero requiere que se examinen los intereses afectados por la acción oficial. No hay duda de que los intereses propietarios de un empleado público se ven sustancialmente afectados por una destitución. El salario de un empleado público constituye, en la mayoría de las situaciones, su única fuente de ingreso. De ello depende para el sostenimiento, techo y sustento de su familia. La privación del ingreso del empleado público desarticula de manera significativa la estabilidad económica y emocional de aquellas familias que se ven privadas de esa fuente de ingresos. Los intereses afectados por una destitución son de considerable

---

[7] *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982), fue resuelto en 1982, con posterioridad a la enmienda a la Ley de Personal del Servicio Público de Puerto Rico (Ley de Personal) y con anterioridad al despido de Torres Solano. Allí expresamos que violaba el debido proceso de ley el despido sumario de un alcalde que tenía un derecho propietario en el puesto (sueldo y beneficios marginales). A tal servidor público debía dársele la oportunidad de ser oído en una *vista informal* previo a la acción del Gobernador. Ello a pesar de que la anterior Ley Municipal concedía la facultad al Gobernador para destituirlo sumariamente.

Por estar envuelto un servidor público elegido mediante sufragio, en *Vélez Ramírez v. Romero Barceló*, supra, entraban en juego otras consideraciones, *e.g.*, derecho al voto, intereses del Municipio, etc., que lo distinguen del caso de autos. Sin embargo, el análisis de intereses es igualmente aplicable cuando está involucrado un empleado de carrera protegido por el principio del mérito y con un interés propietario en su puesto.

magnitud, pues está involucrado el medio de vida de un empleado y de su familia.

El segundo factor requiere que se examine el riesgo de una determinación errónea y el valor probable de garantías adicionales. En la mayoría de las circunstancias, la decisión de un patrono público de destituir a un empleado está fundamentada sobre determinaciones de hecho y la evaluación de documentos, testimonios, etc. En la apreciación de los factores que podrían dar margen a la destitución de un empleado existe alto riesgo de una decisión errónea. La celebración de la vista informal reduce dichos riesgos inherentes.

El último factor atiende el interés gubernamental protegido y la carga final que implica la concesión de garantías adicionales. El Estado tiene un legítimo interés en prescindir de los servicios de aquellos empleados que no son aptos para el servicio público. Por otra parte, el Estado también tiene interés en preservar dentro del servicio público a aquellos empleados que ocupan un puesto de carrera y se desempeñan adecuadamente. En última instancia, el interés del Estado al considerar la destitución de un servidor público es el lograr una gestión pública eficaz, excelente, regular y productiva a través de la retención de los servidores públicos productivos, eficientes, disciplinados y con un alto grado de motivación y espíritu de servicio. Este interés en conservar una sana administración pública requiere del Estado la implantación de medidas adicionales que sirvan a modo de filtro y eviten que éste tome decisiones erróneas en detrimento tanto del interés privado del servidor público como de su propio interés público. *En el fondo, la concesión de una vista previa promueve su interés de garantizar un servicio público eficaz, excelente, regular y productivo.*

La celebración de una vista previa no implica una gran carga fiscal para el Estado. *La vista es informal.* Ello reduce significativamente el costo para el erario público. La celebración de una vista en donde se le dé oportunidad al servidor público para ofrecer su versión de lo ocurrido no tiene el efecto de causar

un retraso innecesario en la decisión de la instrumentalidad pública. Toda agencia cuenta con diversos mecanismos y recursos para celebrar *una vista informal con celeridad*.

En *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), el Tribunal Supremo de Estados Unidos reitera la norma que reconoce el derecho a una *vista informal* previa al despido para aquellos empleados públicos que poseen un interés propietario en sus puestos. *Dicha norma ya había sido adelantada en Mathews v. Eldridge*, 424 U.S. 319 (1976), *y por este Tribunal en Vélez Ramírez v. Romero Barceló*, supra, aquí analizado.

Bajo la norma enunciada, el empleado público tiene ese derecho aun cuando el estatuto o contrato que le da derecho a la permanencia en su puesto no provea para la celebración de una vista previa y sí para una vista formal con posterioridad al despido. Notas, *Tenured Public Employee Entitled to Pre-Termination Hearing Regardless of Statutory Procedure for Dismissal: Cleveland Board of Education v. Loudermill, 105 S. Ct. 1487 (1985)*, 17 Tex. Tech L. Rev. 255 (1986). *Cleveland Board of Education v. Loudermill*, supra, sostuvo además que es la ley estatal y no la federal la que determina cuándo un empleado público posee interés propietario en su puesto. Una vez un empleado público adquiere dicho interés propietario, la cláusula del debido proceso de ley de la Constitución de Estados Unidos, Emdas. V y XIV, L.P.R.A., Tomo 1, impiden que dicho empleado sea despedido sin la oportunidad de ser oído previo a tal acción. Sobre la situación anterior a *Cleveland Board of Education v. Loudermill*, supra, véanse: M. Holloway y M. Leech, *Employment Termination, Rights & Remedies*, Washington, D.C., B.N.A. Books, 1985, pág. 163; Anotación, *Termination of Public Employment: Right to Hearing Under Due Process Clause of Fifth or Fourteenth Amendment–Supreme Court Cases*, 48 L.Ed. 2d 996; Nota, *The Supreme Court 1973 Term*, 88 Harv. L. Rev. 43, 83–90 (1974); Comentario, *Fear of Firing: Arnett v. Kennedy and the Protection of Federal Career Employees*, 10

Harv. C.R. —C.L.L. Rev. 472 (1975); Comentarios, *Constitutional Law: No Hearing Required Prior to Dismissal for Cause of Nonprobationary Federal Employee*, 59 Minn. L. Rev. 421 (1974); Notas, *The Due Process Rights of Public Employees*, 50 N.Y. U. L. Rev. 310 (1975).

■■■■ *Cleveland Board of Education v. Loudermill*, supra, estableció también claramente que no es necesario la celebración de una vista previa al despido en todos los casos.[8] En situaciones donde el patrono percibe un peligro significativo (*a significant hazard in keeping the employee on the job*) al interés gubernamental si mantiene al empleado en su puesto, el curso a seguir es la suspensión del empleado con sueldo. *Cleveland Board of Education v. Loudermill*, supra, págs. 544–545; Notas, *Tenured Public Employee Entitled to Pre-Termination Hearing Regardless of Statutory Procedure for Dismissal: Cleveland Board of Education v. Loudermill*, 105 S. Ct. 1487 (1985), supra, pág. 269.

## VI

*Constitucionalidad del Art. 12.3 del Reglamento de Personal de la Telefónica, la Sec. 4.6(4) de la Ley de Personal, 3 L.P.R.A. sec. 1336(4), y la Sec. 9.2 del Reglamento de Personal de O.C.A.P.*

■■■■ Como señaláramos anteriormente, la Telefónica nos ha planteado frontalmente que el dictamen del Oficial Examinador

---

[8] En casos donde *el peligro sea inminente y de tal envergadura que haga innecesaria la determinación inicial de que existe una justificación razonable para creer que los cargos contra el empleado son ciertos y el curso de acción a seguirse está justificado*, la agencia puede destituir al empleado *sumariamente*. Ej: Casos de mal uso de fondos públicos o cuando haya motivos razonables para creer que existe un peligro real para la salud, vida o moral de los empleados de la agencia o del pueblo en general (sabotaje, intento o amenaza de asesinatos, etc.). *En tales circunstancias de emergencia,* en las cuales existe un interés apremiante del Estado, el debido proceso de ley se cumple al conceder al empleado una vista formal posterior al despido. No se requiere que entre la fecha del despido y la celebración de la vista formal *se le concedan salarios. Cf. Barry v. Barchi,* 443 U.S. 55 (1979); *Mackey v. Montrym,* 443 U.S. 1 (1979). Ese no era el caso de *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985), ni es el caso ante nos.

En casos en que *luego de celebrar la vista previa* la Agencia confirme la verdad de los cargos y determine que el curso de acción a seguir está justificado, puede destituir al empleado sin paga.

tiene el efecto de declarar inconstitucionales el Art. 12.3 del Reglamento de Personal de la Telefónica y la Sec. 4.6(4) de la Ley de Personal, *supra*, así como la Sec. 9.2 de su reglamento, *supra*.(⁹)

█ Cuando se somete una cuestión constitucional ante nos debemos asegurarnos primero si existe una interpretación razonable de la ley que nos permita soslayar el planteamiento constitucional. *E.L.A. v. Aguayo*, 80 D.P.R. 552, 595–597 (1958).

Al confrontar la citada Sec. 4.6(4) de la Ley de Personal, la Sec. 9.2 del Reglamento de Personal de O.C.A.P, *supra*, y la Sec. 12.3 del Reglamento de Personal de la Telefónica con nuestros pronunciamientos, jurisprudenciales, encontramos que no existe una interpretación razonable que nos permita obviar el tener que entrar al análisis de su constitucionalidad. La incongruencia es patente.

█ La enmienda de 1979 a la citada Ley de Personal y a su reglamento eliminó la vista informal previa al despido del proceso de destitución de los empleados públicos. La decisión que hoy reiteramos, en el sentido de que bajo nuestra Constitución la vista previa informal es un requisito de debido proceso de ley, choca con la actuación legislativa de 1979 en la medida en que ésta eliminó ese requisito estatutariamente. Sabido es que las leyes que protegen derechos fundamentales en nuestro ordenamiento deben ajustarse a las garantías mínimas requeridas por nuestra

(⁹) Sobre nuestra función de considerar planteamientos constitucionales bajo circunstancias análogas a éstas, véanse: *Pueblo v. Serrano Nieves*, 93 D.P.R. 56, 57 (1966); *Pueblo v. Colón Obregón*, 102 D.P.R. 369, 372 (1974); *Galarza Soto v. E.L.A.*, 109 D.P.R. 179, 202–203 (1979), opinión disidente en parte y concurrente en parte del Juez Asociado Señor Rigau, a la cual se unió el Juez Presidente Señor Trías Monge; *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250, 256–258 (1977); *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715 (1980).

El 17 de junio de 1986, la Oficina Central de la Administración de Personal (O.C.A.P.) emitió la Carta Normativa Núm. 1–86, dirigida a los señores Secretarios del Gobierno (*incluso al Secretario de Justicia*), Jefes de Agencias, Directores de Corporaciones Públicas y Alcaldes, Sistema de Personal y Agencias excluidas de la Ley de Personal del Servicio Público de Puerto Rico, que proveía para una vista informal en los casos de suspensión de empleo y sueldo o destitución, y acogía lo resuelto en el caso de *Cleveland Board of Education v. Loudermill*, supra. *Tal actuación es un reconocimiento por la Rama Ejecutiva del defecto constitucional de las disposiciones legales cuya constitucionalidad está en controversia en el caso de autos.*

Constitución. Pueden brindar más derecho, pero nunca menos. *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64 (1983); *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265 (1987).

El Estado debe adelantar un interés apremiante como justificación para eliminar la vista informal previa al despido de un empleado público con un derecho propietario adquirido sobre su puesto. *Zachry International v. Tribunal Superior*, 104 D.P.R. 267 (1975). El interés adelantado por el Estado en 1979 fue eliminar la alegada duplicidad de procedimientos con la eliminación de la vista informal a nivel de agencia, de suerte que se eliminaran a su vez las alegadas dilaciones innecesarias y los altos costos que supuestamente ello producía. Si bien ese es un interés importante, no es de tal envergadura que, confrontado con el interés del empleado en retener su puesto, resulte apremiante. La diferencia entre la vista informal previa y la vista formal posterior al despido nos hace concluir que no se produce duplicidad y/o dilaciones innecesarias en los procedimientos con la celebración de la primera. *La naturaleza informal y el contenido sencillo de aquélla no tiene esos resultados.* En vista de ello decretamos la inconstitucionalidad de la Sec. 4.6(4) de la Ley de Personal, 3 L.P.R.A. sec. 1336(4); de la Sec. 9.2 del Reglamento de Personal de O.C.A.P. y el Art. 12.3 del Reglamento de Personal de la Telefónica, en tanto y en cuanto no proveen para una vista informal antes de despedir al empleado público.

## VII

*La naturaleza de la vista informal antes del despido*

De acuerdo con la norma que hoy reiteramos, los requisitos procesales que cumplen con las garantías constitucionales mínimas sobre la vista informal previa al despido son los siguientes:

Debe notificarse a la parte contra quien se va a tomar tal medida disciplinaria del curso de acción específico a seguirse en su contra. Deberá concedérsele una oportunidad de responder a los

cargos. *La vista no debe ser compleja, complicada, extensa o formal.* Basta con que se le permita al empleado explicar personalmente o por escrito las razones por las cuales, según él, no debe ser disciplinado así. El empleado público tiene derecho a que se le notifiquen, por escrito,[10] los cargos en su contra. 3 L.P.R.A. sec. 1336; *Cleveland Board of Education v. Loudermill,* supra, pág. 546.

El propósito de la vista consiste en evitar que la agencia administrativa tome una decisión errónea, privando así a una persona de su sustento diario. *Vélez Ramírez v. Romero Barceló,* supra; *Cleveland Board of Education v. Loudermill,* supra. Así, la vista debe servir como un escrutinio mínimo inicial para determinar si existe justificación razonable para creer que los cargos contra el empleado son ciertos y que el curso de acción específico a seguirse está justificado.[11] *Cf. Helton v. Clements,* 832 F.2d 332, 337 (5to Cir. 1987).

## VIII

*Derecho de Torres Solano a una vista previa a su despido*

Apliquemos los principios antes expuestos al despido de Torres Solano.

Como expresamos anteriormente, Torres Solano estaba clasificado en la agencia la Telefónica como empleado regular gerencial. Como tal, tenía un *status* de empleado permanente en

---

[10] Si bien *Cleveland Board of Education v. Loudermill,* supra, dejó abierta la posibilidad de que la autoridad nominadora le notificara los cargos al empleado público verbalmente, nuestra Ley de Personal le concede mayores garantías que ese mínimo constitucional al exigirle a ésta que tal notificación sea por escrito. 3 L.P.R.A. sec. 1336. Debe prevalecer, pues, esa garantía estatutaria. *Cf. Rivera Santiago v. Srio. Hacienda,* 119 D.P.R. 265 (1987).

[11] Por otro lado, en algunos casos es probable que el propio reglamento de la agencia conceda mayores garantías que nuestra Ley de Personal y la jurisprudencia aplicable. En tales casos prevalecerán las disposiciones reglamentarias que conceden mayores garantías y que la agencia se autoimpuso. Recuérdese que existe el deber de la agencia de velar por que se cumplan sus propios reglamentos. *Rosario Mercado v. San Juan Racing Assn.,* 94 D.P.R. 634 (1967); *García v. Adm. del Derecho al Trabajo,* 108 D.P.R. 53 (1978); *P.S.P. v. Com. Estatal de Elecciones,* 110 D.P.R. 400 (1980).

dicha agencia. Art. 14(15) y Art. 4, Sec. 4.1 del Reglamento de Personal de la Telefónica.

▉ De los propósitos fundamentales de las normas de disciplina de la Telefónica se desprende que para despedir a uno de sus empleados regulares gerenciales debe existir justa causa. Reglamento de Personal de la Telefónica, Art. 10, Sec. 10.4(1). El Art. 14(11) de dicho cuerpo de reglas define tal despido como "la separación total y absoluta de la Telefónica impuesta a un empleado como medida disciplinaria por *justa causa*". (Énfasis suplido.)

Por otro lado, el citado Reglamento de Personal de la Telefónica provee que "[a]quel empleado que cometa una ofensa deberá ser confrontado con la evidencia disponible, y se le dará la oportunidad para que se defienda de los cargos presentados". Art. 10, Sec. 10.4(3).

▉ Así que, según el reglamento aprobado por la Telefónica para reglamentar a sus empleados gerenciales, el derecho de un empleado regular gerencial como Torres Solano requiere la existencia de justa causa, formulación de cargos y concesión de una vista[12] para éste poder defenderse de los cargos en su contra.

▉ La vista dispuesta por el reglamento de la Telefónica es *formal, evidenciaria* y con todas las garantías y derechos constitucionales que cobijan al empleado en una vista ante un tribunal. *Sin embargo, este reglamento no dispone para una vista informal previa al despido. La vista formal evidenciaria concedida es una posterior al despido con derecho a revisión judicial.*

Torres Solano poseía un interés propietario en continuar en su puesto. Su clasificación en la Telefónica era de empleado regular (de carrera) con derecho a retener su puesto permanentemente, a

---

[12] El Reglamento de Personal de la Telefónica define *vista administrativa* como "el procedimiento mediante el cual un empleado puede exponer una queja válida que envuelva cualquier área esencial del sistema de mérito y/o medida disciplinaria que pueda afectarle". Art. 14(42).

menos que existiera justa causa para su despido y previa la formulación de cargos en su contra. 3 L.P.R.A. sec. 1364(4); Art. 14, Sec. 15; Art. 4, Sec. 4.1; Art. 10, Sec. 10.4(1), y Art. 10, Sec. 4(3) del Reglamento de Personal de la Telefónica. Véase J.R. Feijoó, *Los derechos constitucionales y el servicio público*, 42 Rev. C. Abo. P.R. 473–484 (1981).

■ Determinada la existencia de tal derecho propietario se activa la protección constitucional de la cláusula de debido proceso de ley de nuestra constitución y de la de Estados Unidos.

■ Al aplicar el análisis de *Vélez Ramírez v. Romero Barceló*, supra, al caso de autos consideramos que Torres Solano tenía derecho a recibir los salarios dejados de percibir desde el momento en que fue destituido hasta que el Oficial Examinador rindió su decisión, luego de celebrar la vista formal, por no haberse celebrado una vista informal con anterioridad a su destitución.

Torres Solano tenía un interés propietario: seguir recibiendo su salario, principal fuente de ingresos para él y su familia.

En este caso era necesaria la celebración de la vista informal previa al despido de Torres Solano ante la posibilidad de atenuantes en su actuación. Como vimos, el Reglamento de Personal de la Telefónica disponía una penalidad mínima de diez (10) días de suspensión y una máxima de despido para la agresión como primera ofensa. La Telefónica pudo haber limitado su sanción interlocutoria a una suspensión de empleo con sueldo al escuchar la versión de lo ocurrido de Torres Solano. Por otra parte, Torres Solano presentó evidencia de provocación por parte de Nuño Gorbea como justificación a la agresión. Esta era, además, su primera ofensa. En tales circunstancias, la probabilidad de que la agencia tomara una determinación errónea era alta. La evidencia de atenuantes pudo variar el remedio impuesto interlocutoriamente. Sólo cuando se celebra la vista formal es que se confirma la necesidad de la Telefónica de prescindir definitivamente de sus servicios y lo inmeritorio de su justificación a su conducta. En el balance de intereses concluimos que era necesaria la celebración

de una vista informal previa al despido de Torres Solano. Su interés protegido de recibir su única fuente de ingreso sobrepasaba el del Estado en destituirlo sumariamente del puesto.

Por los fundamentos expuestos, *se dictará sentencia mediante la cual se declaran inconstitucionales las disposiciones legales aquí antes señaladas y se modifica la sentencia del Tribunal Superior, Sala de San Juan, en la medida en que restituye a Torres Solano a su empleo. Su destitución fue válida. Se deja inalterada su decisión de que se le paguen los salarios dejados de percibir desde el 31 de mayo de 1984 hasta el 15 de abril de 1985.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García se inhibió. La Juez Asociada Señora Naveira de Rodón no intervino.