Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| SHEILA CANCEL SIERRA<br><br>Recurrida<br><br>Vs.<br><br>CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES<br><br>Recurrente | TA2025RA00018 | *REVISIÓN ADMINISTRATIVA* procedente de la Comisión Apelativa del Servicio Público<br><br>Caso Núm. 2019-10-0166<br><br>Sobre: RETENCIÓN |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece la parte recurrente, el Centro de Recaudación de Ingresos Municipales (CRIM) solicita la revocación de la *Resolución* emitida por la Comisión Apelativa del Servicio Público (CASP) notificada el 13 de marzo de 2025. La CASP ordenó la restitución de empleo y sueldo a la parte recurrida, la señora Sheila Cancel Sierra (señora Cancel o recurrida).

Sobre la base de los motivos expuestos en esta sentencia, *revocamos* la *Resolución* recurrida.

*-I-*

La parte recurrida, trabajó como Operadora de Equipo de Información adscrita al "Call Center" en las Oficinas Centrales del Centro de Recaudaciones de Ingresos Municipales localizadas en San Juan. El 10 de julio de 2019 el CRIM entregó a la recurrida una carta de intención de destitución de su puesto regular de trabajo, firmada por el director ejecutivo de la agencia. En la misiva el CRIM imputó a la recurrida la violación de las siguientes normas de conducta:

(1) Uso Indebido del periodo de descanso tal como tomar más tiempo de lo establecido, o utilizar periodo para otros propósitos contrario a lo dispuesto en el Manual sobre Jornada de Trabajo y Asistencia.

(5) Tardanzas habituales sin razón justificada. Se entiende por tardanzas habituales sin razón justificada, tres (3) tardanzas en un mes o menos de tres (3) en un mes, pero seis en un trimestre.

(7) Ausentarse habitualmente. Se entenderá por ausencias esporádicas de días, horas o minutos que excedan doce (22) días laborables en un período de doce (12) meses.

(8) Abandonar el área de trabajo para atender asuntos no oficiales sin previa autorización del Supervisor.

(18) Negligencia o descuido en la ejecución de sus tareas, deberes y obligaciones

(19) Ociosidad deliberada o pérdida de tiempo durante horas de trabajo.

(20) Producir trabajo deficiente en calidad y demora excesiva en realizar tareas asignadas.

(28) No cumplir con normas establecidas mediante ley, reglamentos y órdenes administrativas que rigen la agenda. (29) Uso Indebido del teléfono. Generar o recibir llamadas telefónicas no oficiales a menos que sean de emergencia o que estén autorizados por un supervisor Inmediato.

(30) Realizar actos que Impidan la aplicación de la ley de Personal y sus Reglas.

Conforme surge del expediente, el CRIM aseveró problemas constantes de conducta, un patrón de ausencias desproporcionadas, impuntualidad crónica respecto a la hora de entrada, incumplimiento con las instrucciones emitidas por sus superiores y desobediencia a las normas de desempeño en su trabajo en el centro de llamadas. Además, su conducta "incluyó", uso impropio del tiempo de descanso, actitud negativa hacia los ciudadanos al contestar llamadas de servicio, uso de palabras soeces, uso del celular personal en horas laborables y el uso de la computadora de trabajo para gestiones personales. El CRIM afirmó que la conducta de la parte recurrida provocó la disminución de

las métricas de servicio al contribuyente y productividad por debajo de los estándares aceptados en la oficina. Respecto a las ausencias, la parte recurrida admitió haberse ausentado 74 veces entre el 1 de julio de 2018 y el 30 de junio de 2019. De las ausencias, 61 corresponden a su licencia de vacaciones y 13 por enfermedad. Según el CRIM, el patrón de ausencias frecuentes continuó por varios años, situación discutida con la parte recurrida de forma verbal, en reuniones y de forma escrita, sin mejoría.

En la mañana del 3 de julio de 2019 la directora del centro de llamadas escribió un correo electrónico a la parte recurrida. En el mensaje relacionó la entrada tardía de la parte recurrida al sistema de métricas de la oficina de servicio al cliente en esa mañana. En específico, la parte recurrida tan pronto registró su hora de entrada al centro de llamadas, entró a su computadora y utilizó un código de labores inválido para permanecer desconectada del cuadro de llamadas. Luego, la directora envió un segundo correo electrónico sobre el mismo asunto, pero esta vez a todos los empleados del centro de llamadas. En el segundo mensaje, la supervisora orientó a los empleados sobre el uso correcto del sistema de métricas y cómo el uso indebido de los códigos de labores y descanso afecta la productividad del centro de llamadas. La directora escuchó a la recurrida quejarse con sus compañeros de trabajo por la amonestación escrita.

Poco después, al notar la presencia de la directora en el área de operaciones del centro de llamadas, la recurrida le increpó por el correo electrónico. El CRIM alegó el uso de palabras soeces de parte de la recurrida y la directora aseveró que la recurrida estaba "descontrolada". La directora del centro de llamadas solicitó calma y control a la recurrida, pero esta manutuvo una "actitud desafiante y de manoteo, uso de expresiones despectivas y

comportamiento de reto a la autoridad". Ante la situación, la supervisora acudió a su oficina y reportó la situación a las personas concernidas en el CRIM.

El 3 de julio de 2019 la parte recurrida fue suspendida de empleo, pero no de sueldo. El 10 de julio de 2019, en comunicación recibida por la recurrida el 15 de julio de 2019, el CRIM notificó su intención de destitución de su puesto de carrera como operadora de entrada de datos. La recurrida ejerció su derecho a vista informal celebrada el 23 de julio de 2019 a la cual compareció mediante representante legal ante un oficial examinador. Las partes presentaron prueba documental y testifical a favor de sus respectivas posturas y en contra del argumento opuesto. La prueba documental admitida de la parte recurrida fue la siguiente:

1. Exhibit 1 Promovida – Comunicación de 17 de abril de 2018 de Estilia Román Dávila y dirigida a todo el personal del *Call Center*.

2. Exhibit 2 Promovida – Comunicación de 5 de junio de 2018 de Estilia Román Dávila y dirigida a todo el personal del *Call Center*.

3. Exhibit 3 Promovida – Comunicación de 6 de agosto de 2018 de Estilia Román Dávila y dirigida a todo el personal del *Call Center*.

4. Exhibit 4 Promovida – Minuta sobre reunión con personal del *Call Center* de 7 de marzo de 2019.

5. Exhibit 5 Promovida – Minuta sobre reunión con personal del *Call Center* de 29 de abril de 2019.

6. Exhibit 6 Promovida – Correo electrónico de 28 de junio de 2019, de Estilia Román Dávila, dirigido a todo el personal, sobre cancelación de acceso a llamadas fuera del área del *call center*.

7. Exhibit 7 Promovida – Correo electrónico de 3 de julio de 2019, de Estilia Román Dávila, dirigido a la Promovente, solicitando que hiciera "login" en el *call center*.

8. Exhibit 8 Promovida – Correo electrónico de 3 de julio de 2019, de Estilia Román Dávila,

dirigido a todo el personal, sobre hacer "login" en el *call center*.

9. Exhibit 9 Promovida – Correo electrónico de 3 de julio de 2019, de Estilia Román Dávila, dirigido a la Promovente, sobre vocabulario utilizado en área del trabajo.

10. Exhibit 10 Promovida – Correo electrónico de 18 de julio de 2018, de Estilia Román Dávila, dirigido a los empleados, incluida la Promovente.

11. Exhibit 11 Promovida – Hoja de descripción de deberes de la Promovente, con su certificación.

12. Exhibit 12 Promovida – Comunicación de 8 de diciembre de 2017 dirigida a la Promovente de parte de Yanis Morales Gracias, directora ejecutiva interina sobre traslado de la Promovente de la División de Servicios Operacionales al Área de Servicio al Contribuyente.

13. Exhibit 13 promovida – Impresión de sistema de registro de jornada de trabajo de la Promovente.

14. Exhibit 14 Promovida – Impresión de sistema de registro de jornada de trabajo de la Promovente.

15. Exhibit 15 Promovida – Impresión del sistema de *call center*.

16. Exhibit 16 Promovida – Correo electrónico de 9 de julio de 2019 de Denise M. Segarra Hernasaiz a Estilia Román Dávila.

17. Exhibit 17 Promovida – Correo electrónico de 9 de julio de 2019 de Denise M. Segarra Hernasaiz a Estilia Román Dávila.

La prueba documental presentada por la parte peticionaria y admitida fue la siguiente:

1. Exhibit 1 Promovente – Evaluación de la Promovente correspondiente al periodo de 16 de enero de 2016 al 15 de enero de 2017.

2. Exhibit 2 Promovente – Evaluación de la Promovente correspondiente al periodo de 16 de enero de 2015 al 15 de enero de 2016.

3. Exhibit 3 Promovente – Solicitud de traslado de la Promovente fechada el 8 de marzo de 2012.

4. Exhibit 4 Promovente – Solicitud de traslado de la Promovente fechada el 31 de julio de 2013.

5. Exhibit 6 Promovente – Respuesta del 15 de agosto de 2013 de la Promovida a la solicitud de traslado de la Promovente fechada el 31 de julio de 2013, denegando la misma.

6. Exhibit 6 Promovente – Solicitud de traslado de la Promovente fechada el 18 de septiembre de 2018.

7. Exhibit 7 Promovente – Solicitud de traslado de la Promovente fechada el 9 de diciembre de 2014.

8. Exhibit 8 Promovente – Comunicación de la Promovente fechada el 7 de julio de 2019 dirigida al Director Ejecutivo del CRIM.

9. Exhibit 9 Promovente – Correo electrónico de 29 de noviembre de 2018 dirigido a la Promovente de parte de la señora Estilia Román Dávila.

10. Exhibit 10 Promovente – Informe Semanal sobre Pagos del *call center* para la semana 18 a 22 de marzo de 2019.

11. Exhibit 11 Promovente – Comunicación de la Promovente fechada el 3 de julio de 2019 dirigida al Director Ejecutivo del CRIM.

12. Exhibit 12 Promovente – Referido de la Promovente al Programa de Ayuda al Empleado de 29 de julio de 2019.

13. Exhibit 13 Promovente – Comunicación del representante legal de la Promovente sobre fecha de vista informal de 18 de julio de 2019.

14. Exhibit 14 Promovente – Carta del 18 de julio de 209 firmada por el Director Ejecutivo del CRIM.

Además, quedó admitida la siguiente prueba:

1. Exhibit 1 Conjunto – Carta de intención de medida disciplinaria de 10 de julio de 019. Estipulada en cuanto a su autenticidad.

2. Exhibit 2 Conjunto – Carta de destitución de 10 de septiembre de 2019. Estipulada en cuanto a su autenticidad.

Finalizado el trámite informal de la vista, el oficial examinador recomendó al Director Ejecutivo del CRIM destituir a la recurrida. El CRIM acogió la recomendación del oficial

examinador y notificó la destitución a la recurrida. El 15 de octubre de 2019, la recurrida presentó una apelación administrativa ante la Comisión Apelativa del Servicio Público. Perfeccionado el recurso, la oficial examinadora emitió su informe en el cual determinó los siguientes hechos:

1. La Promovente trabajaba en el CRIM como Operadora de Equipo de Registro de información en la Oficina Central en el Call Center. (Véase Exhibit 11 de la Promovida.)

2. El 8 de diciembre de 2017 la Promovente fue notificada de su traslado al Área de Servicio al Contribuyente efectivo al 11 de diciembre de 2017. (Véase Exhibit 12 de la Promovida.)

3. En el periodo del 30 de enero de 2017 al 12 de junio de 2017 la Promovente incurrió en 22 tardanzas. (Véase Exhibit 13 de la Promovida.)

4. En el periodo de 7 de mayo de 2018 al 30 de abril de 2019 la Promovente incurrió en 32 tardanzas. (Véase Exhibit 4 de la Promovida.)

5. En las evaluaciones de desempeño del periodo de 16 de enero de 2015 al 15 de enero de 2016 y de 16 de enero de 2016 al 15 de enero de 2017 la Promovente obtuvo una calificación de "sobre promedio" y "alcanza" en todos los criterios con excepción de los criterios de asistencia y puntualidad en los que obtuvo una calificación de "necesita mejorar". (Véase Exhibit 1 y 2 de la Promovente.)

6. La Promovente solicitó traslados de la Oficina Central del CRIM en cuatro (4) ocasiones: 8 de marzo de 2012, 31 de julio de 2013, 9 de diciembre de 2014 y 18 de septiembre de 2018. (Véase Exhibit 3,4, 6 y 7 de la Promovente.)

7. La Supervisora del Call Center, Estilla Román, durante el tiempo que la Promovente trabajó allí enviaba comunicaciones por correo electrónico a los agentes del Call Center sobre diversas situaciones que debían mejorar. (Refiérase a testimonio de Estilia Román).

8. La Supervisora del Call Center, Estilia Román, durante el tiempo que la Promovente trabajó allí nunca se reunió con la Promovente en relación con las comunicaciones que enviaba por correo

electrónico a los agentes del Call Center sobre diversas situaciones que debían mejorar. (Refiérase a testimonio de Estilia Román).

9. El 3 de julio de 2019 la Promovente abandonó su lugar de trabajo sin autorización de su supervisora para realizar un pago del CRIM de su suegra. (Véase Exhibit 11 de la Promovente.)

10. El 3 de julio de 2019 la Promovente recibió un correo electrónico de su supervisora Estilia Román e inconforme con el mismo y sintiéndose con ira fue a reclamarle. (Véase Exhibit 11 de la Promovente.)

11. La Promovente fue destituida de su puesto el 10 de septiembre de 2019 (Véase Exhibit 2 Conjunto.)

En atención a estas determinaciones de hechos la oficial concluyó como cuestión de derecho:

Surge de la prueba y además la propia Promovente reconoció tener un problema de ausentismo y puntualidad desde el 2011, pero sobre el cual solo se le notificó una reprimenda escrita para aquel entonces. Asimismo, la Promovente reconoció que en una ocasión abandonó su área de trabajo sin la autorización de su supervisara para efectuar un pago de su suegra. La Promovente alegó que no solicitó autorización porque la supervisara no estaba en su escritorio. Sin embargo, ello no es excusa. Muy bien pudo esperar a que su supervisara llegara para pedir la autorización. Finalmente, de los propios dichos de la Promovente también se configuró la infracción de la insubordinación. Adviértase que con relación al correo electrónico del 3 de julio de 2019 la Promovente reconoció que reaccionó al mismo con ira y que se dirigió donde su supervisora a reclamarle. Si bien no se presentó evidencia de que esta utilizara palabras soeces, el evento si presenta un acto de insolencia.

No obstante, no presentó evidencia sobre las siguientes:

16. Realizar actos amenazantes; usar lenguaje irrespetuoso, indecente u obsceno, hacer expresiones deshonestas tanto verbales como escritas, en sus relaciones con supervisores, compañeros de trabajo y ciudadanos.

17. Incurrir en conducta desordenada, tal como: realizar ruidos innecesarios, conversaciones estridentes, o conducta de

cualquier otra índole que cause distracción o molestia personal en la unidad de trabajo o en sus alrededores.

18. Negligencia o descuido en la ejecución de sus tareas, deberes y obligaciones.

19. Ociosidad deliberada o pérdida de tiempo durante horas de trabajo.

20. Producir trabajo deficiente en calidad y cantidad y demora excesiva en realizar tareas asignadas.

28. No cumplir con las normas establecidas mediante Ley, Reglamentos y Órdenes Administrativas que rigen la Agencia.

29. Uso indebido del teléfono. Generar o recibir llamadas telefónicas no oficiales a menos que sean de emergencia o que estén autorizadas por su supervisor inmediato.

30. Realizar actos que impidan la aplicación de la Ley de Personal y sus Reglas.

De la prueba presentada por la parte Promovida no se deprende que la Promovente fuera negligente o descuidada en su trabajo (Infracción Núm. 18), que incurriera en ociosidad deliberada en sus horas de trabajo (infracción Núm. 19) (Infracción Núm. 17) ni que incurriera en conducta desordenada. La Promovida no presentó, evaluaciones de desempeño deficiente ni quejas de contribuyentes. De una mirada a las únicas evaluaciones de desempeño presentadas como evidencia surge que la Promovente obtuvo calificaciones de "sobre promedio" o "alcanza" en todos los criterios con excepción de la asistencia y puntualidad donde necesitaba mejorar. Tampoco se presentó evidencia del lenguaje irrespetuoso o las palabras soeces que empleó la Promovente (Infracción, Núm. 16), ello a pesar de que según el CRIM hubo varios testigos de este evento, sin embargo, no presentó a ninguno de ellos.

La prueba tampoco demostró que la Promovente produjera trabajo deficiente (infracción Núm. 20) ni se especificó que hiciera un uso indebido del teléfono (Infracción Núm. 29). El testimonio de la Supervisora se limitó a establecer que envió una serie de comunicaciones a varios empleados del Call Center llamándole la atención sobre varios asuntos (el uso de códigos, las ausencias y tardanzas y el uso de vocabulario soez en el área de trabajo) pero las comunicaciones eran

generales a todos los empleados del Call Canter y en ninguno se le imputó una conducta específica a la Promovente. Más aún, en ningún momento se originó un proceso de medida disciplinaria para atender dichas ofensas.

Las reuniones individuales que hubo fueron para atender los mismos asuntos generales que se habían estado notificando en los correos electrónicos y de la minuta de las reuniones se desprende que con cada uno de los empleados discutieron los mismos asuntos. Evidentemente, esta falta de particularización no permitió que la Promovente pudiera conocer cuál conducta específica debía atender y las consecuencias de no hacerlo. Por otra parte, tampoco se especificó qué actos ejecutó la Promovente que impidieron a la aplicación de la. Ley de Personal y sus Reglas (Infracción 30). Finalmente, la Infracción Núm. 28 sobre no cumplir las normas establecidas es una infracción general que requiere que se prueben infracciones específicas para que pueda constituirse.

Así las cosas y sí bien es cierto que en la prueba del caso queda demostrado que en el Call Canter había numerosos problemas con las ejecutorías de los agentes y que la Promovente reconoció tener un problema de tardanzas, también resultó claro de la prueba que el CRIM no cumplió con la imposición de medidas correctivas progresivas. De las faltas imputadas a la Promovente solo había una medida disciplinaria previa (reprimenda escrita) con relación a las ausencias y tardanzas y la misma fue del año 2011, es decir aproximadamente ocho (8) años previos a la fecha de la destitución. Por tanto, bajo el principio de medida disciplinaria procede imponer a la Promovente una reprimenda escrita, no la destitución. No existe prueba en el expediente que justifique la imposición del despido como medida disciplinaria desviando el principio de progresividad. Máxime cuando la Supervisora de 1a Promovente no se reunió con esta para discutir las faltas en las que según se alegó, estaba incurriendo.

La CASP aceptó las recomendaciones y ordenó al CRIM:

[Q]ue deje sin efecto la medida disciplinaria de destitución del puesto como Operadora de Equipo de Registro de Información en la Oficina Central que ocupaba la PROMOVENTE y que se sustituya por una reprimenda escrita.

[Q]ue reinstale a la PROMOVENTE en el puesto como Operadora de Equipo de Registro de información en la Oficina Central que ocupaba la PROMOVENTE.

> [Q]ue remueva la carta de la medida disciplinaria del expediente de personal de la PROMOVENTE.
>
> [P]agarle los salarios y beneficios marginales dejados de percibir por el tiempo que estuvo destituida de empleo y sueldo. El salario neto de la PROMOVENTE deberá computarse conforme a lo establecido en Zambrana García v. E.L.A.

El 19 de mayo de 2025 el CRIM solicitó la reconsideración de la resolución antes colegida. La CASP denegó la solicitud. Inconforme, el CRIM comparece ante este tribunal y señala el siguiente error:

> ERRÓ LA CASP AL DECLARAR CON LUGAR LA APELACIÓN ANTE SÍ Y DEJAR SIN EFECTO LA MEDIDA DISCIPLINARIA DE DESTITUCIÓN IMPUESTA POR EL CRIM, TODA VEZ QUE LA CONDUCTA DE LA RECURRIDA, FUE TAN LESIVA AL BUEN FUNCIONAMIENTO DEL CRIM, QUE JUSTIFICÓ LA MEDIDA DISCIPLINARIA, COMO EXCEPCIÓN A LA DISCIPLINA PROGRESIVA.

La parte recurrida también compareció mediante alegato escrito. Por tanto, procedemos a resolver con el beneficio de la comparecencia de las partes, el contenido del expediente y el derecho aplicable.

-*II*-

**A.**

Es norma reiterada que las decisiones de los organismos administrativos merecen la mayor deferencia judicial, pues cuentan con el conocimiento experto de los asuntos a su cargo. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019), *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 821 (2012). Al momento de revisar una decisión administrativa, el criterio rector para los tribunales es la razonabilidad de la actuación de la agencia. *Graciani Rodríguez v. Garage Isla Verde, supra,* pág. 127; *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).

Igualmente, los tribunales debemos ejercer un juicio independiente al resolver si una agencia actuó dentro del marco de sus facultades estatutarias. *Vázquez v. Consejo de Titulares*, 2025 TSPR 5, págs. 15. Pero principalmente, los tribunales revisores no tenemos que otorgar deferencia a la interpretación de derecho que haga una agencia simplemente porque relegar a las agencias la función de interpretar las leyes, desafía el mandato de la LPAU pues "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Sección 4.5, LPAU, 3 LPRA sec. 9675; *Vázquez v. Consejo de Titulares, supra*, págs. 14-15.

Las determinaciones de hechos de organismos y agencias "tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas". *Vélez v. ARPE*, 167 DPR 684, 693 (2006). La revisión judicial debe limitarse a determinar si la agencia actuó de manera arbitraria, ilegal, o en forma tan irrazonable que su actuación constituya un abuso de discreción. *Graciani Rodríguez v. Garage Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). La deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

**B.**

La Comisión Apelativa del Servicio Público fue creada mediante el Plan de Reorganización Núm. 2-2010, 3 LPRA Ap. XIII, en adelante, Plan de Reorganización, en el que se fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público y la Comisión de Relaciones del Trabajo del Servicio Público. La CASP es un organismo administrativo *cuasi-judicial* especializado en casos laborales, de administración de recursos humanos y querellas, tanto al amparo de la Ley de Relaciones del Trabajo del Servicio Público y la Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico. Artículo 4, 3 LPRA Ap. XIII.

El Artículo 8 del Plan de Reorganización dispone algunas de las funciones conferidas a la CASP:

> La Comisión tendrá, entre otras, las siguientes facultades, funciones y deberes:
>
> [...]
>
> i) conceder los remedios que estime apropiados y emitir las órdenes que sean necesarias y convenientes conforme a las leyes aplicables. Esto incluye, entre otras, órdenes provisionales o permanentes de cesar y desistir; órdenes para la reposición de empleados suspendidos o destituidos, con o sin el abono de la paga atrasada dejada de percibir y la concesión de todos los beneficios marginales a los cuales los empleados hubiesen tenido derecho durante el período de suspensión o destitución; órdenes imponiendo sanciones económicas o procesales a agencias, funcionarios o representantes legales por incumplimiento o dilación de los procedimientos; y órdenes imponiendo sanciones a agencias, organizaciones sindicales o representantes exclusivos, incluyendo la descertificación de estos últimos;
>
> [...]
>
> l) atenderá toda querella o apelación que se presente oportunamente y que concierna a su jurisdicción, para lo cual deberá interpretar, aplicar y hacer cumplir las disposiciones de la Ley Núm. 184 de 3 de agosto de 2004, según

enmendada, conocida como la "Ley para la Administración de los Recursos Humanos en el Estado Libre Asociado de Puerto Rico y reglamentación vigente, en todo lo relativo a la administración de los recursos humanos y la relación obrero patronal;

[...]

El Artículo 12 el Plan de Reorganización establece la jurisdicción primaria de la CASP sobre:

> [L]as apelaciones surgidas como consecuencia de acciones o decisiones de los Administradores Individuales y los municipios en los casos y por las personas que se enumeran a continuación:
>
> a) cuando un empleado, dentro del Sistema de Administración de los Recursos Humanos, no cubierto por la Ley Núm. 45-1998, según enmendada, conocida como la "Ley de Relaciones del Trabajo del Servicio Público", alegue que una acción o decisión le afecta o viola cualquier derecho que se le conceda en virtud de las disposiciones de la Ley 8-2017, según enmendada, la Ley 107 2020, según enmendada, conocida como "Código Municipal de Puerto Rico", los reglamentos que se aprueben para instrumentar dichas leyes, o de los reglamentos adoptados por los Administradores Individuales para dar cumplimiento a la legislación y normativa aplicable;[1]

[...]

### C.

Un empleado de carrera tiene un interés propietario protegido sobre su empleo cuando existe una expectativa de continuidad sobre el puesto. Véanse, *Orta v. Padilla Ayala*, 131 DPR 227, 241 (1992); *Torres Solano v. PRTC*, 127 DPR 499 (1990). En atención al debido proceso de ley, una agencia solo puede destituir a un empleado de carrera por justa causa, previa notificación de formulación de cargos por escrito y apercibimiento de su derecho a solicitar vista previa. *Adventist Health v. Mercado Ortiz*, 171 DPR 255, 263-64 (2007).

---

[1] La Ley Núm. 24-2023 enmendó este Artículo del Plan de Reorganización a los fines de sustituir, entre otras cosas, la referencia a la Ley Núm. 81-1991, la cual fue derogada por la Ley Núm. 107-2020, conocida como *Código Municipal de Puerto Rico*, 21 LPRA secs. 7001, *et seq.*

La destitución de un empleado o empleada del servicio público es un castigo extremo que solo procede ante conducta y actuaciones en contra de los reglamentos laborales y la política pública de la agencia o entidad gubernamental concernida. *Cruz Rivera v. Municipio de Guaynabo*, 205 DPR 606, 611-612 (2020); *Rodríguez v. Tribunal Superior*, 101 DPR 151, 168 (1973). De ordinario, las primeras ofensas no ameritarán la destitución, pero proceden cuando la falta o acto sea de tal seriedad o naturaleza que revele una actitud o un detalle de carácter tan lesivo a la paz y buen orden que constituiría imprudencia esperar para separar al empleado del establecimiento. *Srio. Del Trabajo v. I.T.T.*, 108 DPR 536, 544 (1979).

El Director Ejecutivo del CRIM emitió la *Orden Administrativa Número 94-01 Sobre Medidas Correctivas* (OA-94-01) en armonía con las facultades conferidas por la anterior Ley del Centro de Recaudación de Ingresos Municipales y la Ley de Contribución Municipal sobre la Propiedad. La orden administrativa autoriza la ejecución de medidas disciplinarias a los empleados del CRIM cuya conducta no se ajuste a las normas de conducta establecidas. La orden impone a cada funcionario la responsabilidad de cumplir con las normas de conducta según establecidas en el Artículo 4 de la orden. Artículo 2, OA-94-01.

En su parte pertinente el Artículo 4 dispone que los empleados del CRIM están obligados a observar las siguientes normas de conducta.:

   a) Asistir al trabajo con regularidad y puntualidad, y cumplir con la jornada de trabajo establecida.

   b) Observar normas de comportamiento correcto, cortes respetuoso en sus relaciones con sus supervisores, compañeros de trabajo y ciudadanos.

c) Realizar eficazmente y con diligencia las tareas funciones asignadas a su puesto y otras compatibles a estas que se le asignen.

d) Acatar aquellas órdenes e instrucciones de sus supervisores compatibles con la autoridad delegada en éstos y con las funciones y objetivos de la agencia donde trabaja.

e) Mantener la confidencialidad de aquellos asuntos relacionados con su trabajo, a menos que reciba un requerimiento o permiso de autoridad competente que así lo requiera. Nada de lo anterior menoscabará el derecho de los ciudadanos de tener acceso a los documentos y otra información de carácter público.

f) Realizar tareas durante horas no laborables cuando la necesidad del servicio así lo exija y previa notificación correspondiente, con antelación razonable.

g) Vigilar, conservar y salvaguardar documentos, bienes e intereses públicos que estén bajo su custodia.

[...]

Es responsabilidad de los supervisores inmediatos de velar por el fiel cumplimiento de las normas que rigen la conducta de los empleados del CRIM y tomar las medidas correctivas conforme a las normas establecidas en la orden administrativa. Artículo 2, OA-94-01. El Artículo 5 de la orden establece 4 tipos de medidas correctivas: (1) amonestación verbal; (2) amonestación escrita; (3) reprimendas escritas; y (4) suspensión de empleo y sueldo. Corresponde al supervisor inmediato efectuar la amonestación tanto verbal como escrita. Sección 5.1, Articulo 5, OA-94-01. Ambos tipos de amonestaciones no son consideradas acciones disciplinarias, pero el supervisor debe llevar un registro de los hechos y la acción tomada bajo la amonestación verbal. La amonestación escrita "podrá utilizar como evidencia para sustentar la recomendación de que se apliquen medidas disciplinarias". *Íd.* Cuando la conducta de un empleado constituya una infracción a las normas que amerite una amonestación verbal, el supervisor

citará al empleado por escrito a una reunión; amonestará sobre la conducta, le exhortará a corregir su conducta y registrará la fecha y propósito de la reunión. Sección 6.1, Artículo 6, OA-92-01. Cuando la conducta de un empleado amerite una amonestación escrita, el supervisor preparará una comunicación que indique una relación de hechos, la norma de conducta violentada, que la acción constituye una amonestación y una exhortación a corregir la conducta observada. *Íd.* El supervisor citará al empleado a una reunión en la cual le entregará la comunicación y ofrecerá orientación adicional necesaria; retendrá copia de la comunicación y mantendrá informado al jefe. *Íd.*

La reprimenda escrita y la suspensión de empleo y sueldo son acciones disciplinarias ejercidas por el Director Ejecutivo y forman parte del expediente del empleado. *Íd.* La primera es la advertencia formal a un empleado sobre infracciones a normas de conducta. *Íd.* Una suspensión de empleo y sueldo significa:

> La separación del servicio para un período determinado impuesta a un empleado por el Director Ejecutivo como medida disciplinaría por justa causa previa formulación de cargos por cada situación de hechos que den lugar a la acción correctiva. *Íd.*

En lo pertinente a este recurso, la Sección 5.2 del Artículo 5 de la OA-92-01 establece:

1. De ocurrir infracciones a las normas de conducta se aplicarán las medidas correctivas utilizando coma guía el Anejo en esta Orden Administrativa sabre Medidas Correctivas las Infracciones de Normas de Conducta. Como norma general, estas medidas se aplicarán en orden sucesivo que aparecen en el Anejo, según el empleado incurra o reincida en las infracciones. No obstante, el supervisor inmediato o el Director Ejecutivo, podrán en el ejercicio de su discreción imponer las medidas más severas determinan [sic] que la falta cometida por el empleado es de tal naturaleza o gravedad que así lo amerite.

2. Al proceder a determinar la medida correctiva a aplicarse al empleado deberán considerarse, entre otros, los siguientes factores: años de

servicios, productividad, expediente u hoja de servicios, las reincidencias, la naturaleza de la falta que cometió combinación de infracciones en que incurra el empleado y la posición jerárquica dentro de la organización con relación a la infracción cometida.

3. La medida correctiva que se aplique debe estar sostenida por la prueba y guardar proporción con la infracción.

4. ...[L]a infracción que se le imputa al empleado debe ser clara, precisa y descriptiva

5. Si la decisión fuere destituir al empleado o suspensión de empleo y sueldo, se le advertirá a empleado de su derecho a una vista administrativa informal previo a la determinación final. Se le notificará de ese derecho y se le apercibirá que el mismo debe ejercerse dentro del término de diez (10) días y que transcurrido dicho término la autoridad nominadora podrá dar efectividad a la determinación. Los empleados podrán apelar ante la Junta de Apelaciones del Sistema de Administración de Personal dentro del término de treinta (30) días a partir del ·recibo de la notificación de suspensión de empleo y sueldo o destitución.

6. ...

### -*III*-

En su informe, la Oficial Examinadora concluyó que el CRIM falló en aplicar las medidas disciplinarias en el orden progresivo dispuesto en el Anejo de la OA-94-01. Aun así, quedó demostrado que la parte recurrida incurrió en la siguiente conducta:

1. Uso indebido del periodo de descanso.

2. Tardanzas habituales sin razón justificada.

3. Ausentarse habitualmente.

4. Abandonar el área de trabajo sin previa autorización.

5. Insubordinación: negarse a acatar órdenes e instrucciones de su supervisor.

Sin embargo, la oficial examinadora determinó que el CRIM falló en seguir su propio reglamento disciplinario. Recomendó una sanción más leve, una reprimenda escrita y la reposición de empleo y sueldo a la recurrida. En palabras de la funcionaria:

[B]ajo el principio de medida disciplinaria procede imponer a la Promovente una reprimenda escrita, no la destitución. No existe prueba en el expediente que justifique la imposición del despido como medida disciplinaria desviando el principio de progresividad. Máxime cuando la Supervisora de 1a Promovente no se reunió con esta para discutir las faltas en las que según se alegó, estaba incurriendo.

También, la funcionaria concluyó que en el expediente administrativo no existe evidencia sobre la ocurrencia de las siguientes infracciones imputadas a la parte recurrida:

16. Realizar actos amenazantes; usar lenguaje irrespetuoso, indecente u obsceno, hacer expresiones deshonestas tanto verbales como escritas, en sus relaciones con supervisores, compañeros de trabajo y ciudadanos.

17. Incurrir en conducta desordenada, tal como: realizar ruidos innecesarios, conversaciones estridentes, o conducta de cualquier otra índole que cause distracción o molestia personal en la unidad de trabajo o en sus alredededores.

18. Negligencia o descuido en la ejecución de sus tareas, deberes y obligaciones.

19. Ociosidad deliberada o pérdida de tiempo durante horas de trabajo.

20. Producir trabajo deficiente en calidad y cantidad y demora excesiva en realizar tareas asignadas.

28. No cumplir con las normas establecidas mediante Ley, Reglamentos y Órdenes Administrativas que rigen la Agencia.

29. Uso indebido del teléfono. Generar o recibir llamadas telefónicas no oficiales a menos que sean de emergencia o que estén autorizadas por su supervisor inmediato.

30. Realizar actos que impidan la aplicación de la Ley de Personal y sus Reglas.

La parte recurrida argumenta que no incurrió en una conducta tan reprochable y lesiva a la sana administración del CRIM como para imponer la severa sanción del despido por una primera ofensa. En su recurso de revisión judicial añade que "[e]n el caso de autos la prueba presentada por la parte recurrente se

basó en hechos especulativos e imprecisos basados a su vez en documentos de ningún o escaso valor probatorio".

La posición del CRIM dista de las conclusiones realizadas por la Oficinal Examinadora y la posición de la parte recurrida. El CRIM postula que la parte recurrida fue "advertida por correo electrónico, correos electrónicos grupales, reuniones individuales y reuniones grupales, de las ausencias, las tardanzas y las actitudes en el área de trabajo". Esto en referencia a los mensajes enviados durante el transcurso de los años 2018 y 2019. Estos mensajes contienen advertencias y amonestaciones sobre: 1) uso inadecuado del periodo de descanso; 2) problemas de asistencia; 3) tardanzas recurrentes; 4) vocabulario impropio en el área de trabajo; 5) llamadas personales durante horas laborables; 6) el uso de celulares en horas laborables y; 7) el uso incorrecto de los códigos de llamadas. Veamos lo que, demuestra el expediente administrativo sobre los extremos antes expuestos.

De entrada, el expediente demuestra que la propia recurrida reconoció: (1) tener un problema de ausentismo y puntualidad desde el 2011, (2) que en una ocasión abandonó su área de trabajo sin la autorización de su supervisara para efectuar un pago de su suegra y la oficial examinadora también concluyó que sobre la base de la prueba ventilada en la vista adjudicativa quedó configurada la "infracción de la subordinación". Estos hechos quedan fuera de controversia, la parte recurrida no los disputa y existe suficiente evidencia en el expediente administrativo para inferir su ocurrencia. Por ejemplo, respecto a las ausencias, la parte recurrida admitió haberse ausentado 74 veces entre el 1 de julio de 2018 y el 30 de junio de 2019. De las ausencias, 61 corresponden a su licencia de vacaciones y 13 por enfermedad.

En cuanto al resto de las infracciones la directora del centro de llamadas del CRIM testificó que tenía por costumbre examinar

el reporte diario de cada empleado y que el reporte de la parte recurrida demostró que utilizaba ciertos "códigos sin la autorización debida y por un tiempo prolongado". Según explicó, los empleados del centro de llamadas cuentan con diferentes códigos para diferentes tipos de tareas. El empleado debe registrar en el sistema de llamadas el código que refleje certeramente el tipo de tarea al cual dedica su tiempo durante el día de trabajo. Así, por ejemplo, existe un código que muestra al empleado activo en tareas de respuesta de llamadas de los ciudadanos contribuyentes, otro para consultas, otro más para tareas administrativas y uno para descansos. Los códigos demuestran el tipo de labor al cual dedica su tiempo de trabajo el empleado, pero también existen otros códigos que sirven para tomar descansos o para labores administrativas desvinculadas de la atención a llamadas.

Los reportes de la parte recurrida demostraron que utilizaba los códigos inadecuadamente al dejar de atender las llamadas del público y dedicarse a otros asuntos no vinculados con el servicio al cliente. Así, por ejemplo, las métricas demuestran que la parte recurrida dedicaba la mayoría de su tiempo a otras tareas no relacionadas con la atención a llamadas. Inclusive, y todavía más alarmante, es que la evidencia en el expediente demuestra cómo la parte recurrida utilizaba los códigos de forma deshonesta al indicar que estaba ocupada en cierta tarea cuando la realidad y, según el testimonio de sus superiores, y el resultado de los reportes de métricas, estaba conectada al teléfono efectuando llamadas personales o en conversaciones con sus compañeros de trabajo.

La supervisora del centro de llamadas, quien es la supervisora directa de la parte recurrida, se reunió personalmente con esta para discutir estos asuntos, pero no hubo mejoría. Según muestra la auditoria efectuada al sistema de llamadas del CRIM, la parte recurrida dedicaba menos de la mitad del día a atender

llamadas de los ciudadanos. Esto contribuyó a la gravísima métrica de 70% de llamadas abandonadas por los empleados del centro de llamadas. La auditoría efectuada por un ente externo al CRIM abarcó los primeros seis meses del año 2019. Notamos que la mayoría de los correos electrónicos enviados por la directora del centro de llamadas ocurrieron luego del recibido del resultado de la auditoría. La parte recurrida debía mejorar sobre estos aspectos y dejar los malos hábitos de trabajo que había desarrollado. Fue amonestada tanto verbal como por escrito, en reuniones grupales e individuales con su supervisora inmediata y con la directora del centro de llamadas.

Los correos electrónicos enviados por la directora del centro de llamadas demuestran la preocupación de la funcionaria respecto al altísimo número de llamadas abandonadas por sus supervisados, el problema de tardanzas y el uso impropio de los códigos de trabajo. Notamos también cómo las advertencias, amonestaciones, reuniones y orientaciones otorgadas a la parte recurrida no surtían efecto alguno sobre las malas prácticas de la empleada. Así lo confirman los reportes de sistema y la auditoría externa efectuados sobre los datos capturados por el sistema de llamadas del CRIM. Los correos electrónicos intercambiados entre el personal gerencial del CRIM demuestran una alta preocupación por el problema del servicio deficiente ofrecido por el centro de llamadas en aquel momento.

En definitiva, el expediente administrativo demuestra que la parte recurrida recibió varias amonestaciones verbales y escritas sobre el uso impropio de los códigos de trabajo, su renuencia a seguir las instrucciones de sus superiores respecto al uso apropiado de los códigos, la falta de atención a las llamadas y sobre su grave problema de ausencias y tardanzas. Por ejemplo, el

29 de abril de 2019 la parte recurrida fue reunida de forma individual para discutir:

> Uso de teléfono y la computadora para gestiones personales -Se notificó a la recurrida que, según el reglamento esa práctica quedó prohibida, con efectividad inmediata.
>
> Vocabulario inapropiado – Se notificó a la recurrida que quedó terminantemente prohibido el uso de vocabulario y expresiones inapropiadas en el área de trabajo, con efecto inmediato.
>
> Ingerir alimentos en el área de trabajo – Se notificó a la recurrida que quedó prohibido ingerir alimentos en el área de trabajo, y que debía utilizar las áreas designadas por la agencia, con efecto inmediato.
>
> Ausencias y tardanzas – Se habló nuevamente con la recurrida sobre el tema de ausencias y tardanzas noticiándole que se estarían tomando nuevas medidas prontamente. También se le notificó el balance de días acumulados al 31 de marzo de 2019.

Los correos electrónicos del 3 de julio de 2019 y 9 de julio de 2019 confirman que la parte recurrida no recibía con buena actitud las amonestaciones y disciplina practicada por sus superiores. Demuestran una actitud de insubordinación y rebeldía sin razón aparente para cumplir con las expectativas de su patrono correspondientes a su puesto de trabajo. Es responsabilidad de los supervisores inmediatos velar por el fiel cumplimiento de las normas que rigen la conducta de los empleados del CRIM y tomar las medidas correctivas conforme a las normas establecidas en la orden administrativa. Artículo 2, OA-94-01. La parte recurrida recibió varias amonestaciones verbales y escritas.  Al final una reprimenda escrita de parte del Director del CRIM y suspensión de empleo y sueldo antes de la acción definitiva de separación de empleo y sueldo. Todo en armonía con lo dispuesto en los Artículos 4 y 5 de la OA-94-01. Las desviaciones disciplinarias imputadas a la recurrida fueron el cúmulo de faltas acaecidas durante el año fiscal 2018. La razón para el despido no fue únicamente el

incidente descrito en el memorando del 3 de julio de 2019 bien fue el patrón de malos hábitos de trabajo de la parte recurrida evidenciado en los reportes de métricas, una auditoría externa, los memorandos enviados a la parte recurrida, la minuta de la reunión del 29 de abril de 2019 y los correos electrónicos enviados a la parte recurrida. La carta de intención de despido le notificó a la recurrida sobre todos estos extremos. El altercado del 3 de julio de 2019 fue solamente una muestra más del patrón de faltas de la recurrida. Conforme relató la señora Estilia Román, la parte recurrida interceptó a esta última "hablando en voz alta y manoteando" y ocurrió el siguiente intercambio:

> [Señora Cancel]: Párate ahí, [n]o me gusta lo que estás haciendo, [a]quí todo el mundo habla malo hasta en los pasillos. Ya tú te estas pasando y yo te voy a decir una cosa; ¡¡ya yo estoy mal!!
>
> [Señora Román]: […] Sheila contrólate.
>
> [Señora Cancel] : Contrólate tu (por cuatro veces seguidas alzando más la voz).
>
> [Señora Román]: contrólate e [hizo] silencio.
>
> [Señora Cancel] varias veces de nuevo –"Te control as tuuuu!!!!" [y apuntó a la señora Román] con el dedo índice a la cara.
>
> Elevó más la voz y dijo [Sheila Cancel] mira cómo nos tienes a todas [….].
>
> Entrada SUMAC #12, Memorando de 9 de julio de 2019, págs. 2 y 3.

Durante la vista adjudicativa, la señora Román relató:

> [E]l 3 de julio de 2019 tuvo un incidente con la [Recurrida] "detonó" su destitución. La Testigo narró que ese día en la mañana envió un correo electrónico a la [Recurrida] porque había llegado hacia un rato a la agencia y no se había conectado al sistema. En el correo electrónico incluyó un reporte que mostraba los agentes que estaban conectados en sistema en ese momento. El referido documento se admitió como el Exhibit 7 [del CRIM].

Más tarde en la mañana del 3 de julio de 2019 envió otro correo electrónico, esta vez a los agentes del Call Center mediante

el cual se le recordó que debían conectarse al sistema a las 8:00 a.m. En este correo electrónico se incluyó un reporte que demostraba que los agentes del Cali Cantarse estaban conectado pasadas las 8:00 am. El referido documento se admitió como el Exhibit 8 [del CRIM].

A grandes rasgos, el Tribunal Supremo expresó que es principio jurídico en el servicio público que las medidas disciplinarias impuestas a los empleados deben guardar proporción con la falta cometida. *Torres Solano v. P.R.T.C.,* 127 DPR 499, 515 (1990); *Srio. del Trabajo v. I.T.T.,* 108 DPR 536, 547 (1979). Como norma general, las primeras ofensas no ameritarán la destitución. *Rodrigo v. Tribunal Superior,* 101 DPR 151, 168 (1973). Pero este caso no trata de una falta o acto aislado, mas bien el despido de la recurrida es el resultado del cúmulo de faltas antes colegidas sobre las cuales la recurrida fue advertida y re advertida sin lograr algún cambio en su comportamiento en el lugar de empleo. *Cruz Rivera v. Municipio de Guaynabo,* 205 DPR 606, 612 (2020)

En Puerto Rico, un empleado público tiene un reconocido interés en la retención de su empleo cuando el interés está protegido por la ley (empleado de carrera) o cuando las circunstancias crean una expectativa de continuidad. *Orta v. Padilla Ayala,* 131 DPR 227, 241 (1992); *Torres Solano v. P.R.T.C.,* 127 DPR 499 (1990); *Pierson Muller I v. Feijoó,* 106 DPR 838, 852 (1978). De ahí que aquellos empleados con carácter permanente posean una expectativa de continuidad en el empleo, que forma parte de su derecho de propiedad, de la cual no pueden ser privados sin que medie el debido proceso de ley. Art II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1; Emdas. V y XIV, Const. EE. UU., L.P.R.A., Tomo 1.

En cuanto al procedimiento o proceso debido a un empleado de carrera cuando está la intención de privarle de su empleo, en *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, 133 DPR 881, 888 (1993), el Tribunal Supremo señaló que "[d]ependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial". *Domínguez Castro v. E.L.A.*, 178 DPR 1, 47 (2010) Asimismo, mediante casuística quedó establecido diversos requisitos con los que debe cumplir todo procedimiento adversativo para satisfacer las exigencias mínimas de un debido proceso procesal, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído[; (4) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra]; (5) tener asistencia de abogado y (6) que la decisión se base en el récord. *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, pág. 889. En fin, lo primordial es asegurar que las actuaciones del Estado sean justas e imparciales. *Díaz Carrasquillo v. García Padilla*, 191 DPR 97, 110–111 (2014); *E.L.A. et al. v. Molina Figueroa*, 186 DPR 461, 471 (2012); *Rivera Rodríguez & Co. v. Lee Stowell, etc.*, supra, págs. 887–888.

En este caso la recurrida disfrutó de las garantías mínimas que dispone el derecho a un debido proceso de ley. Fue notificada adecuadamente sobre las intenciones de su patrono, tuvo oportunidad de ser escuchada ante un ente imparcial y compareció a los procedimientos con la asistencia de su representante legal y finalmente esta revisión judicial asegura que la decisión de las entidades gubernamentales concernidas esté fundamentada en el récord del caso. Igualmente, somos de la opinión que el CRIM cumplió con la reglamentación aplicable al momento de ocurrir los hechos. El expediente administrativo demuestra que el CRIM, al

notificar la intención de destituir a la recurrida la suspendió de empleo y sueldo, trató mediante amonestaciones verbales, amonestaciones escritas, en reuniones grupales e individuales de corregir la conducta impropia de la recurrida. Sin embargo, sus esfuerzos fueron infructuosos.

El empleado afectado tiene un interés propietario que merece protección, pero igualmente el gobierno como patrono posee intereses gubernamentales que deben ser igualmente protegidos. Según explicó el Tribunal Supremo en, *Torres Solano v. P.R.T.C.*, 127 DPR 499, 522 (1990):

> El Estado tiene un legítimo interés en prescindir de los servicios de aquellos empleados que no son aptos para el servicio público. Por otra parte, el Estado también tiene interés en preservar dentro del servicio público a aquellos empleados que ocupan un puesto de carrera y se desempeñan adecuadamente. En última instancia, el interés del Estado al considerar la destitución de un servidor público es el lograr una gestión pública eficaz, excelente, regular y productiva a través de la retención de los servidores públicos productivos, eficientes, disciplinados y con un alto grado de motivación y espíritu de servicio.

Nuestra función, como tribunal apelativo en materia administrativa, es delinear la discreción de las entidades gubernamentales para garantizar que sus decisiones no sobrepasen el marco de los poderes delegados y sean consecuentes con la política pública que las origina. *Torres Rivera v. Policía de PR*, 196 DPR 606, 625–626 (2016); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999). Según muestra el expediente administrativo, el patrón de faltas disciplinarias frecuentes de la parte recurrida continuó por varios años. La situación fue discutida con la parte recurrida de forma recurrente, de forma verbal, en reuniones y por escrito, sin mejoría. Surge de la prueba documental presentada por el CRIM, que la parte recurrida conocía las faltas y la conducta que debía evitar o mejorar. Esto al informársele en reuniones

individuales y grupales. Estas conductas fueron: (1) el uso del teléfono o computadora para asuntos personales; (2) uso de vocabulario inapropiado; (3) ingerir alimentos en el área de trabajo; (4) ausencias y tardanzas frecuentes.

La evidencia documental demuestra que la empleada fue advertida en múltiples ocasiones sobre el desvío en su conducta, pero optó por ignorar las correcciones y desafiar activamente la autoridad, lo que confirma su resistencia a la supervisión. Como muestra de esto último, está el incidente entre la directora del centro de llamadas y la recurrida el 3 de julio de 2019. Las actuaciones de la recurrida en aquel incidente son una muestra de actitud de insubordinación a instrucciones directas de sus superiores en cuanto a los aspectos labores sobre los cuales debía mejorar.

Los años de experiencia laboral de la recurrida en el CRIM debieron ser suficientes para percatarse que esa actuación, junto al patrón de faltas recurrentes discutidos, son actuaciones contrarias a derecho y está en contravención con lo que el Pueblo espera de sus funcionarios. Ante la gravedad de la conducta de la empleada, la determinación del director del CRIM de destituirla no fue irrazonable, ilegal, arbitraria o caprichosa. Por el contrario, el utilizar propiedad pública para fines privados, el descuido en sus deberes al dejar de atender las llamadas de los contribuyentes quienes hacen posible la existencia de su puesto de trabajo, el no acatar las instrucciones de sus superiores, el mal uso de los códigos de trabajo y el altercado del 3 de julio de 2019 nos llevan a concluir que la parte recurrida incurrió en varias conductas de carácter grave y violó simultáneamente varias normas de conductas del CRIM, a saber:

1. Uso indebido del periodo de descanso, tal como tomar más tiempo de los establecido, o utilizar periodo para otros propósitos, contrario a lo dispuesto en el Manual Sobre Jornada de Trabajo y Asistencia.

5. Tardanzas habituales sin razón justificada. Se entenderá por tardanzas habituales sin razón justificada, tres (3) tardanzas en un mes de trabajo o menos de tres en un mes, pero seis (6) en un trimestre.

7. Ausentarse habitualmente. Se entenderá por ausencias habituales por asunto personal, aquellas ausencias esporádicas de días, horas o minutos que excedan doce (12) días laborables en un período de doce (12) meses.

8. Abandonar el área de trabajo para atender asuntos no oficiales sin previa autorización del supervisor.

16. Realizar actos amenazantes; usar lenguaje irrespetuoso, indecente u obsceno, hacer expresiones deshonestas tanto verbales como escritas, en sus relaciones con supervisores, compañeros de trabajo y ciudadanos.

17. Incurrir en conducta desordenada, tal como: realizar ruidos innecesarios, conversaciones estridentes, o conducta de cualquier otra índole que cause distracción o molestia personal en la unidad de trabajo o en sus alrededores.

18. Negligencia o descuido en la ejecución de sus tareas, deberes y obligaciones.

23. Insubordinación: negarse a acatar órdenes e instrucciones de sus supervisores compatibles con la autoridad delegada a estos y con las funciones y objetivos de la agencia; insolencia o comportamiento similar.

Al ejercer su proceder disciplinario el CRIM siguió las pautas del Reglamento de Personal para Empleados de Carrera, de 12 de julio de 1993, vigente al momento de los hechos. El referido Reglamento de Personal dispone que, [l]os empleados de carrera con estatus regular tendrán permanencia en sus puestos, siempre que estos satisfagan los criterios de productividad, eficiencia, orden y disciplina que deban prevalecer en el servicio público. Artículo 8, Sección 8.1 del Reglamento de Personal. En virtud del Artículo 8, Sección 8.3, inciso 9 del Reglamento de Personal, el

CRIM adoptó la OA-94-01 del 1 de junio de 1994. Las medidas dentro del ámbito de autoridad del supervisor son las amonestaciones verbales y escritas. Cuando el supervisor considere que la infracción amerita una acción disciplinaria podrá recomendar la misma al Director Ejecutivo, quien en el ejercicio de su discreción podrá enviar una reprimenda escrita, suspender de empleo y sueldo o destituir al empleado. Artículo 5, sección 5.1, OA-94-01.

Ante los hechos particulares de este caso y el análisis sosegado y balanceado de los factores relevantes según surgen del expediente administrativo, es forzoso concluir que las infracciones múltiples que la parte recurrida cometió fueron de tal gravedad que justificaban la actuación del director ejecutivo del CRIM de imponer la sanción más severa. Lo anterior, luego de haber amonestado verbalmente, por escrito e incluso como parte del proceso de disciplina progresiva seguido fue suspendida de empleo y luego notificada de la intención de destitución. Por lo tanto, el CRIM actuó razonablemente y dentro de los límites establecidos en la reglamentación vigente. *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012). El error se cometió.

La CASP ignoró la naturaleza y gravedad de la conducta de la parte recurrida fundamentada en la evidencia sustancial que obra en el expediente administrativo, así como otros factores que la reglamentación pertinente exigía considerar para determinar la sanción adecuada. Por consiguiente, la decisión administrativa del CASP no puede sostenerse.

En consecuencia, la CASP erró cuando modificó la sanción que originalmente impuso a la parte peticionaria, pues no consideró todos los factores que el procedimiento identifica como relevantes para determinar cuál sanción es la que guarda proporción con la infracción. Al contrario, enfocó su análisis en

solo algunas de las faltas incurridas por la parte recurrida, algunas distantes en tiempo, ignoró otras más recientes y consideró que, debido a una supuesta ausencia de medidas disciplinarias previas, sólo correspondía una reprimenda escrita y no la destitución. Si la CASP hubiese realizado un análisis adecuado, hubiese llegado a la conclusión correcta de que la naturaleza y gravedad de las actuaciones de la empleada en este caso justificaban la decisión del CRIM de destituirla.

### *-IV-*

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, *revocamos* la resolución recurrida y reinstalamos la determinación del CRIM mediante la cual la parte recurrida quedó destituida de empleo y sueldo.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones